## SEINSHEIMER et al. v. BURKHART.

### No. 10181.

Court of Civil Appeals of Texas. Galveston.
March 3, 1936.

Rehearing Denied April 23, 1936.

A. C. Wood, of Houston, and Terry, Cavin & Mills and Joyce Cox, all of Galveston, for appellants.

Allen, Helm, Jacobs & Settegast, of Houston, for appellee.

LANE, Justice.

This suit was brought by Zora Ann Burkhart, hereinafter, for convenience, referred to as Miss Burkhart, and as appellee, against Joe Seinsheimer and wife, Blanche Fellman Seinsheimer, Mr. and Mrs. J. F. Seinsheimer, and G. D. Flood, Jr., to recover for personal injuries suffered by her as the result of being struck by an automobile driven by G. D. Flood, Jr., in the city of Houston on the 10th day of June, 1931, it being alleged that the collision occurred at the intersection of Main and Walker streets in said city.

As against G. D. Flood, Jr., plaintiff alleged that at the time of the collision he was driving the car at an excessive rate of speed and without proper control, failing to keep a lookout, and in crossing Main street at its intersection with Walker avenue when signal lights were so burning as to make such crossing unlawful under an ordinance of the city, and many other acts of negligence not necessary to be here stated.

As against J. F. Seinsheimer and wife and Joe Seinsheimer and wife, appellee alleged that J. F. Seinsheimer, Jr., was riding in the car with G. D. Flood, Jr., and

was the agent of his parents, J. F. Seinsheimer and wife, and his grandparents, Joe Seinsheimer and wife, acting in the scope of his duty and in furtherance of the purposes, business, and pleasure of said defendants, and was negligent in failing to keep a proper lookout, in failing to warn and remonstrate with G. D. Flood, Jr., in intrusting the operation of the automobile to G. D. Flood, Jr., who was incompetent to drive, etc. In addition, it was alleged that all parties were engaged in a joint enterprise; also that the adult defendants were negligent in intrusting the car to J. F. Seinsheimer, Jr., who was incompetent, reckless, etc., and in intrusting the same to G. D. Flood, Jr., who was incompetent, reckless, etc. Damages were sought in the sums of $44,000 actual, and $5,000 exemplary.

The defendants filed joint answer, G. D. Flood, Jr., answering through his father and guardian ad litem, G. D. Flood. They denied generally and alleged that plaintiff was walking across Walker street without keeping a proper lookout and while the signal lights were so burning, that to enter into the intersection of Walker street was prohibited by the ordinances of the city of Houston; that she walked into said intersection without giving automobiles in the intersection reasonable opportunity to clear after the signal lights controlling Walker street traffic had turned from red to amber, and that she was walking across Walker street diagonally and not in the regular lane of traffic, contrary to the ordinances of the city of Houston, etc. Each of her acts and omissions was alleged to constitute contributory negligence as well as sole proximate cause of her injuries.

The foregoing statement is substantially a copy of the statement of the acts of negligence charged by plaintiff to the defendants in appellants' brief, same being accepted as correct by counsel for appellee in their brief, wherefore we accept it as sufficient for a presentation of the issues presented by this appeal.

The cause was tried before a jury, and upon the close of the evidence, each and all of the defendants requested the court in writing to instruct the jury to return a verdict for them. All of such requests were overruled by the court.

After such refusal, the court submitted 65 special issues to the jury and instructed them to answer such issues from the preponderance of the evidence, "that is, the greater degree and weight of the credible evidence * * * without reference to the effect that your answers may have upon the judgment to be rendered in the case."

In answering the special issues submitted, the jury found:

(1) That the driver of the Seinsheimer car failed to maintain a reasonable lookout for pedestrians who might be crossing the intersection in question just prior to and at the time of striking the plaintiff; that such failure was negligence and a proximate cause of the injuries sustained by plaintiff.

(2) That the driver of the car failed to give any warning of the approach of the car as it crossed the intersection in question; that such failure was negligence and a proximate cause of the injuries sustained by plaintiff.

(3) That the failure of the driver of the car to stop the same before striking plaintiff was negligence; that such failure was a proximate cause of plaintiff's injuries.

(4) That the driver of the car failed to slacken the speed of the car just prior to striking plaintiff; that such failure was negligence and a proximate cause of plaintiff's injuries.

(5) That the driver of the car, just prior to striking plaintiff, was driving the car at a dangerous rate of speed; that the driving at such rate of speed was negligence and a proximate cause of plaintiff's injuries.

(6) That just prior to striking plaintiff the driver of the car was driving the same at a speed in excess of 20 miles per hour; that the driving of the car in excess of 20 miles per hour was a proximate cause of plaintiff's injuries.

(7) That the driver of the car operated the same into the intersection in question when the amber light was displayed facing him, and that such operation was a proximate cause of plaintiff's injuries.

(8) That the driver of the car operated the same over said intersection while the red light was displayed facing the car; and that such act was a proximate cause of plaintiff's injuries.

(9) That the driver of the car failed to have the same under reasonable control, that is, under such control as a person of ordinary prudence would maintain under the same or similar circumstances; that such failure was negligence and a proximate cause of plaintiff's injuries.

(10) That the car in question was the family car of defendant, Joe Seinsheimer, that is, one maintained for the pleasure, comfort, and convenience of the household and dependent members of the family of the owner, and that it was being used as such family car.

(11) That at the time of the collision in question the car was being driven by G. D. Flood, Jr., with the consent of defendant, Mrs. Joe Seinsheimer.

(12) That the car at the time of the collision was being used by J. F. Seinsheimer, Jr., in furtherance of the purposes of Mrs. Joe Seinsheimer and with her consent.

(13) That G. D. Flood, Jr., at the time of the collision was incompetent to drive at the time Mrs. Seinsheimer consented for him to drive the car; that the giving of such consent was negligence and a proximate cause of plaintiff's injuries.

(14) That J. F. Seinsheimer, Jr., failed to keep a proper lookout for pedestrians crossing Walker avenue just prior to the collision; that such failure was negligence and a proximate cause of plaintiff's injuries.

(15) That J. F. Seinsheimer failed to remonstrate with G. D. Flood, Jr., about the speed at which he was driving; that his failure to do so was negligence and a proximate cause of plaintiff's injuries.

(16) That at the time plaintiff was injured by the car in question, Mrs. Joe Seinsheimer and G. D. Flood, Jr., were engaged in a joint enterprise.

(17) That at the time of plaintiff's injury Mrs. Joe Seinsheimer and J. F. Seinsheimer were engaged in a joint enterprise.

(18) That at the time plaintiff was injured the car in question was being driven in furtherance of such joint enterprise.

(19) That the injury sustained by plaintiff was not sustained as the result of an unavoidable accident.

(20) That plaintiff, Miss Burkhart, just before being struck by the car did not fail to keep a reasonable lookout to discover automobiles that might be approaching from the west on Walker avenue.

(21) That they did not find that Miss Burkhart stepped off the curb and onto the surface of Walker avenue at a time when the signal light on the northeast corner of the intersection of Main street and Walker avenue facing south was showing red.

(22) That Miss Burkhart did not walk, or attempt to walk, across the intersection of Walker avenue with Main street when a red light was displayed facing her on the northeast corner of Main street where Walker avenue intersects said street.

(23) That Miss Burkhart did attempt to cross Walker avenue by walking over and upon a portion of the street not included within the lines of the sidewalk, but that such act did not proximately cause or contribute to cause her injury.

(24) That after the light that Miss Burkhart was facing on Main street turned green she did not fail to give an automobile or automobiles which had entered Main street facing a green light, and which were then attempting to cross Main street on Walker avenue, time to clear Main street before she proceeded on across Walker avenue.

(25) That Miss Burkhart did not, immediately prior to being struck by the car, walk more hastily across Walker avenue than a person of ordinary prudence would, under the same or similar circumstances, have walked.

(26) That $14,000 will fairly and reasonably compensate the plaintiff, Miss Burkhart, for her injuries proximately caused by the collision in question, exclusive of the reasonable value of necessary doctors, surgeons, nurses, medical and hospital services, rendered to plaintiff in the treatment of her injuries, which value is $601.

Upon the return of the verdict, the defendants, G. D. Flood, Jr., and Joe Seinsheimer and wife, each filed their respective motions for an instructed verdict in their favor, notwithstanding the verdict, all of which motions were by the court refused.

The court then proceeded, upon the verdict of the jury and the evidence, to render judgment, decreeing that Miss Zora Ann Burkhart recover of and from Joe Seinsheimer and wife, Blanche Fellman Seinsheimer, and G. D. Flood, Jr., jointly and severally the sum of $14,601, together with interest thereon at the rate of 6 per cent. per annum from date of judgment, and further decreeing that the plaintiff take nothing against defendants J. F. Seinsheimer and wife.

From such judgment, Joe Seinsheimer and wife, and G. D. Flood, Jr., have appealed.

Appellants contend, for reversal of the judgment, (1) that the court erred in not instructing a verdict for defendants at the

close of the evidence, upon motion therefor, and (2), in not rendering judgment in their favor, upon their motion therefor, notwithstanding the verdict, in that the undisputed evidence shows, and the jury found, that Miss Burkhart, in violation of a Houston ordinance, was not crossing in the lane of pedestrian traffic, which evidence and finding convicted her of negligence per se, which contributed to her injuries, and in that under the existing circumstances G. D. Flood, Jr., the driver of the automobile in question, was not required to foresee her injury.

We overrule such contention. It is true that upon conflicting evidence the jury found that Miss Burkhart did attempt to cross Walker avenue by walking over and upon a portion of the avenue not included within the lines of the sidewalk, but they also found upon the evidence that such act was not the sole proximate cause of her injury, nor a proximate cause of such injury; that it did not contribute to her injury. We think there was sufficient evidence to sustain the finding of the jury that the act of Miss Burkhart referred to was not a proximate cause of her injury, and that it did not contribute thereto. We think it is apparent that if Miss Burkhart was walking a foot outside the fixed line of traffic or a few feet within said line the collision in question would in either event have taken place. In such circumstances, the finding of the jury that Miss Burkhart's act complained of was not a proximate cause of her injury is supported by the evidence.

We are also of opinion that there was ample evidence to support the finding of the jury as to the negligence charged to G. D. Flood, Jr., the driver of the car in question, and that the collision was not an unavoidable accident.

W. C. Torpey testified, among other things, that Miss Burkhart was in line with the sidewalk traffic going north down Main street, that is, in line with the Krupp & Tuffly building situated on the south corner of Walker avenue where it intersected Main street; that at the time Miss Burkhart was struck she was about 25 feet in the street attempting to cross the same, that he heard no warning given by the driver of the car; that at the time Miss Burkhart was struck he heard the brakes of the car squeaking, the driver was throwing the brakes on to stop it; that he saw Miss Burkhart as she stepped off the curb after the light changed, the green light changed just as she stepped off.

Harry Susman testified that he was at the northeast corner of Main and Walker and stopped facing a red light upon Main street and waited for the green light to come on to cross the street; that when the light changed he started across the street; that the change of the light was from red to green; that he saw Miss Burkhart thrown into the air; that as he waited on the corner he was closer to the curb on Main street than to the inside, and that Miss Burkhart at the time she was struck was not directly in front of him but at an angle from four to five feet to the left; that at the time the car struck Miss Burkhart he was standing about six or eight feet from the car, and that he would judge that at such time the speed of the car was from 30 to 35 miles per hour; that he did not hear a horn blow before Miss Burkhart was struck, nor did he hear the sound of brakes being applied.

Miss Burkhart, the plaintiff, testified that she stopped at the Krupp & Tuffly corner facing north on Main street; that she stopped just on the corner about midway of the curb line and the Krupp & Tuffly building; that she was watching the signal light just directly in front and north of her; that the light, while she stood on the corner, was red, and that she left the corner, after the light changed to green, to cross Walker avenue; that as she attempted to cross she looked to her left, and that as she approached the center of the street she looked to the right to see if any cars were coming from that side; that other people were on the corner with her who started forward when she did; that the point where she was standing on the corner was midway between the curb line on Main street and the building line; that there were other people standing with her, some to her left and some to her right, and some back of her.

Sam Miller, who was in the car with G. D. Flood, Jr., the driver of the car, and J. F. Seinsheimer, Jr., all three of them on the front seat, testified that "they were coming to town to pick up Miss Emma Seinsheimer and Mrs. Joe Seinsheimer at Schwartz China Shop, the ladies having invited him to go to lunch with them at the Rice Roof." With reference to crossing Main street, he testified as follows:

"Q. How fast were you running then, Mr. Miller? A. My estimate before—we

might have speeded up slightly when we got halfway across the street there, but were not going faster than a little over twenty miles an hour,—no faster than that at the most.

"Q. When you were halfway across the street and you speeded up? A. Naturally to get across the street. * * *

"Q. And you weren't watching those people when the light changed to green for them to go forward, were you? A. I was paying no particular attention to them. I had the impression of their presence there as one looks out of the corner of one's eye at an object.

"Q. And you didn't see the light that they were watching? A. No, I did not.

"Q. Did you see Miss Burkhart before the car struck her? A. I just saw her, just actually in front of the car just a snap before she was struck.

"Q. Just the instant that the car came in contact with her body? A. Just almost immediately."

Asked if the green light continued to show as long as he looked at the light, he answered, "No, it did not. It changed to amber when we were about half way across Main Street."

J. F. Seinsheimer, Jr., when being asked what called his attention to the fact that they were going to have an accident, said: "Sam Miller saying 'My God,' or something to that effect"; that he then looked and saw a lady on the front part of their car.

G. D. Flood, Jr., testified that he did not see Miss Burkhart before the car struck her; that he could not say that he saw her; the thing that attracted his attention to Miss Burkhart was Sam Miller making some exclamation.

■ It is, we think, clearly apparent from the testimony above stated, as well as from the evidence as a whole, that there was a sharp conflict in the same on the issue as to whether Miss Burkhart's attempt to cross Walker avenue at the time and manner she did was a proximate cause, or contributed to cause her injury. Wherefore, this court is without authority to set aside the finding of the jury upon such conflicting evidence, to the effect that Miss Burkhart's attempt to so cross the street was not a proximate cause of her injury, and that it did not contribute to the same.

There was evidence tending to show that Miss Burkhart was crossing the street with a group of pedestrians, and that if she was beyond the imaginary sidewalk line, she was only slightly so, on the side most distant from the approaching car, and that had Flood, the driver of the car, been looking ahead, he would have seen her.

■ The issue of proximate cause does not become a matter of law where negligence per se results from a violation of a statute, but remains as much an issuable fact under conflicting evidence as in cases of common-law negligence. The rule is announced by Judge Greenwood of the Supreme Court in Waterman Lumber Co. v. Beatty, 110 Tex. 225, 218 S.W. 363, 364, as follows: "There is no doubt that it is essential to the maintenance of an action for damages for a personal injury, founded on the violation of a statute, to establish, not only a violation of the statute, but that the violation was the proximate cause of the injury. Though the violation of the statute would be negligence per se, the action would fail without a showing of proper causal connection between the negligence and the injury. Shearman & Redfield, Law of Negligence (Street's Ed.) § 27; Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 225, 38 S.W. 162; Spokane & Inland R. Co. v. Campbell, 241 U. S. 497, 510, 36 S.Ct. 683, 60 L.Ed. 1125; Stirling v. Bettis Mfg. Co. (Tex.Civ.App.) 159 S.W. 915, 916; Elk Cotton Mills v. Grant, 140 Ga. 727, 79 S.E. 836, 48 L.R. A.(N.S.) 656. It follows that there was the same necessity for a proper application of the thoroughly settled law of proximate cause in this case as in the ordinary negligence case involving no violation of a statute."

In Texas & N. O. R. Co. v. Harrington, 235 S.W. 188, 192, the Commission of Appeals said:

"Where a plaintiff and defendant are each guilty of negligence, it is a question of fact for the jury as to which negligence is the proximate cause of the injury. That rule is well settled. * * *

"While the violation of a statute would be negligence per se, such negligence would not preclude a recovery unless it also be found to be the proximate cause of the injury." Crowl v. West Coast Steel Co., 109 Wash. 426, 186 P. 866; Bassett & Co. v. Wood, 146 Va. 645, 132 S.E. 700; Ford v. Werth, 197 Wis. 211, 221 N.W. 729.

Appellants' contentions made by their third and fourth propositions have been

considered and have been disposed of adversely to them by what we have already said. We shall therefore overrule the same without further discussion.

By appellants' fifth to ninth propositions it is insisted that the trial court, on motion therefor by appellants, should have instructed a verdict for appellants Joe Seinsheimer and wife, because (a) there was no evidence to justify submission of the cause against them on the theory of the family car doctrine; (b) because there was no evidence to justify the submission of the cause against them on the theory of joint enterprise, wherefore the court should have rendered judgment for appellants, notwithstanding the verdict of the jury; (c) that the court erred in submitting the cause against such appellants on the theory of negligent intrustment of the car to an incompetent or incompetents, since there was no evidence that either Fellman Seinsheimer, Jr., or G. D. Flood, Jr., was incompetent; (d) because there was no cause of action pleaded and proved against defendants, Mr. and Mrs. Joe Seinsheimer, wherefore, the trial court erred in not peremptorily instructing the jury to find for said defendants.

All of the contentions made by appellants under their propositions Nos. 5 to 9, inclusive, are by the majority of this court overruled.

The undisputed evidence shows that the car in question was owned by Mr. and Mrs. Joe Seinsheimer as their family car, which was used by them and the constituents of their family for their pleasure, comfort, and convenience, and that at the time and times the various acts involved here took place the car was being driven by young Seinsheimer and G. D. Flood, Jr., the first of the age of 15 years and the other of the age of 17. The evidence shows that Mrs. Joe Seinsheimer, desiring to go from Galveston to Houston, some 50 miles distant, for purposes of her own and for the pleasure of young Seinsheimer, her grandson, G. D. Flood, Jr., and her daughter, Miss Emma Seinsheimer, invited said persons to accompany her on the trip. It is also shown that en route from Galveston to Houston, Miss Emma first took the wheel and drove for a short distance, then young Seinsheimer drove for some distance, then young Flood took the wheel and drove to Houston. It is shown that after reaching Houston the car was driven to the Esperson building for the purpose of allowing Mrs. Seinsheimer to consult her doctor, an oculist; that from the Esperson building the car with its occupants was driven to the Schwartz China Shop on the east side of Main street, where one of the ladies wanted to make some purchases. The ladies left the car at Schwartz's Shop and according to the testimony of the witness, Sam Miller, Mrs. Seinsheimer directed young Seinsheimer to take the car and go after Sam Miller, whom she had invited to lunch with them and to attend an orchestra on the Rice Hotel Roof as their guest, and to return to Schwartz's Shop and pick her and her daughter up. It is shown that after Sam Miller had been taken into the car, young Seinsheimer, to whom the car had been intrusted to go after Miller by Mrs. Seinsheimer, permitted G. D. Flood, Jr., to drive the car back to the shop to pick up Mrs. Seinsheimer and her daughter, and that on returning to Swartz's Shop the accident in question occurred.

Sam Miller testified that he was picked up by J. F. Seinsheimer, Jr., and G. D. Flood, Jr.; that when the accident occurred they were on their way to pick up Miss Emma Seinsheimer and Mrs. Joe Seinsheimer, who had invited him, Miller, to eat lunch with them on the Rice Roof; that they were to pick up the two ladies at Schwartz's China Shop, situated on the east side of Main street, in the block next to his left and north of Walker avenue.

Mrs. Joe Seinsheimer testified that on the morning of the accident she left Galveston in her car accompanied by her daughter, her grandson, and young Flood, to go to Houston; that her purpose in going to Houston was to attend a musical on the Rice Roof; that her daughter and her grandson wanted to go to the musical and they decided to go; that when she left Galveston she had not intended to make purchases in Houston, however she did some shopping there; that she wanted to go to her oculist, who has an office in the Esperson building in Houston, and that she went to consult him on the day of the accident.

We think the evidence on the issue of "joint enterprise" showed that Mrs. Joe Seinsheimer, her grandson, G. D. Flood, Jr., and her daughter, Miss Emma Seinsheimer, left Galveston on the morning of the accident in Mrs. Seinsheimer's car on a mission of pleasure in which all of the occupants of the car were interested, and for some special purposes of Mrs. Seinsheimer only.

The plaintiff sufficiently alleged that the automobile in question was on the day of the accident and at the time of the accident being operated and used by the consent of Mrs. Joe Seinsheimer for the pleasure, comfort, and recreation of herself, her daughter, and her invited guests. It is shown that Mrs. Seinsheimer permitted G. D. Flood, Jr., a youth of 17 years of age, to drive the car in congested streets of the city of Houston to accomplish her purposes in making her trip to Houston.

We think the pleadings and evidence are sufficient to raise the issue of liability of the owners of the car for the injuries suffered by Miss Burkhart by reason of the collision in question, wherefore the court did not err in refusing to instruct a verdict for appellants at the close of the evidence, nor in refusing to render judgment for them notwithstanding the verdict of the jury.

Appellant G. D. Flood, Jr., contends that the court erred in submitting the cause to the jury as against Mr. and Mrs. Joe Seinsheimer and that by such error he was "prejudiced."

In view of what we have said with reference to the submission of the cause as against the Seinsheimers, we overrule the contention here made without further discussion.

Special issue No. 29 submitted, reads as follows: "Do you find from a preponderance of the evidence that G. D. Flood, Jr., on June 10, 1931, was incompetent to drive the automobile in question when such consent was given, if you have found it was given?"

Appellants Mr. and Mrs. Joe Seinsheimer insist that in submitting such issue the court erred to their prejudice, in that there was no evidence justifying the submission of such issue.

We overrule the contention. Mrs. Joe Seinsheimer testified that Flood, Jr., had been driving, but that she did not let him drive long because she was just afraid; that her daughter said she could not ride with him driving, and so they had young Seinsheimer to again take the wheel; that they were nervous.

The jury found that Miss Burkhart did attempt to walk across Walker avenue by walking over and upon a portion of Walker avenue not included within the lines of the sidewalk. Such finding was based on the testimony of witnesses that Miss Burkhart was attempting to walk across the avenue outside and to the east of the pedestrian line, thus placing her some distance from Main street. The undisputed evidence shows that Flood, Jr., entered Main street when he was en route to Schwartz's Shop, situated to his left on the east side of Main street. Notwithstanding that to get to such shop he had to turn to his left on Main street, the evidence shows that he drove entirely across Main street, entered Walker avenue, and struck Miss Burkhart, who, according to the testimony of witnesses, was to the east of the pedestrian line on Walker avenue. Just why he was off the route to the shop on the east side of Main street at the time he struck Miss Burkhart cannot, we think, be accounted for, except on the theory of his incompetency as a driver. From the facts stated, we conclude that the submission of the issue complained of was not error.

By appellants' bill of exceptions it is shown that Mr. Allen, an attorney for the plaintiff, in argument to the jury said: "One of them did not see her and could not place her in the street; that was Flanagan. Rice saw her and said he could not place her out there. They came up here and got on this witness stand and said in their judgment he was running 18 to 20 miles per hour. They contradict their own selves. They come up and try to make you believe one could have stood at the white line and have seen her out there. They run their car across the street and Flanagan jumped out and run over and got on the running board of the car, and talked to those boys and took them to the police station and held them there until Walker said turn them loose."

It is also shown by the bill that counsel for appellants, without interrupting the argument, orally requested the court to instruct the jury to disregard such argument. Counsel also in writing requested the court to declare a mistrial because of such argument; that the grounds stated for such requests were that such argument tended to inform and did inform the jury that George Flood, Jr., had been taken to the police station and there detained because the officers considered that he had been guilty of an infraction of the law, and because said argument was inflammatory, prejudicial, and irrelevant to any issue in the cause. It is then shown by the bill that the court overruled the motion for mistrial and instructed the jury not to consider the argument, and stated to them that the argument was withdrawn from their consideration and for them not to consider same. Whereupon Mr. Allen joined in the instruction of the

court and withdrew the argument, stating to the jury that he withdrew the same and asked them not to consider it. Appellants here contend that such argument presents cause for a reversal of the judgment.

We overrule such contention. Officers, three in number, testified to facts which tended to acquit George Flood, Jr., and young Seinsheimer of any negligence or of any violation of law, and it seems to us, under all the facts shown and the circumstances surrounding the matter discussed, the argument was not prejudicial to appellants, but, on the other hand, was favorable to them, in that it in effect was a statement to the jury that the officers, after an investigation, found that the two young men were not guilty of the wrongs charged to them. We think it is apparent that no prejudice resulted to appellants from the argument, especially in view of the fact that the court announced in the presence of the jury a disapproval thereof with instructions to them not to consider the same, and in view of the fact that counsel who made the argument withdrew it and requested the jury not to consider it. We think it would be unreasonable to hold that such argument, under the facts shown, could have possibly had any effect on the jury prejudicial to appellants, or in any degree affecting them in arriving at their answers to the several issues submitted, or any one of them. Galveston, H. & S. A. Ry. Co. v. Wells (Tex. Civ.App.) 15 S.W.(2d) 46; Lucey v. Dedman (Tex.Civ.App.) 21 S.W.(2d) 546; Galveston, H. & S. A. R. Co. v. Marti (Tex. Civ.App.) 183 S.W. 846; Schmidt v. Houston Electric Co. (Tex.Com.App.) 242 S.W. 1019; Fidelity Union Casualty Co. v. Koonce (Tex.Civ.App.) 51 S.W.(2d) 777.

The court charged the jury that they should answer each special issue from a preponderance of the evidence, "that is, the greater degree and weight of credible evidence before you." He submitted each issue in this form: "Do you find from a preponderance of the evidence," etc.

Appellants insist that the charge was in error as respects burden of proof, in that it improperly placed the burden of proof and was conflicting in itself as to burden of proof, said charge instructing the jury: "You will answer such special issues from the preponderance of the evidence," and prefacing each issue: "Do you find from a preponderance of the evidence," and instructing the jury with respect to each question to answer, "We do" or "We do not." They insist that such charge places too great a burden on the defendants on the submitted issues of primary negligence, and is in conflict with the burden of proof charge as the same is contained in each issue.

We overrule such contention. It will be noted that the court specifically placed the burden of proof on each issue; that he prefaced each issue with the inquiry: "Do you find from a preponderance of the evidence * * *" Such charge has been held to be the better way of placing the burden of proof. Federal Surety Co. v. Smith (Tex. Com.App.) 41 S.W.(2d) 210, 214; City of Waco v. Diamond (Tex.Com.App.) 65 S. W.(2d) 272, 273; Fidelity & Guaranty Fire Corporation v. Ormand (Tex.Civ.App.) 62 S.W.(2d) 675, 678; Ford v. Couch (Tex. Civ.App.) 16 S.W.(2d) 869.

In the case first cited, the court said: "In view of the frequency with which we are called upon to determine the correctness of the form of special issues, we desire to suggest that the least objectionable method of procedure is for the trial court to propound the question to be submitted in the form, 'Do you find from the preponderance of the evidence that' (following with the question to be determined), so framing the question, upon each issue, as to place the burden of proof where it properly belongs."

In City of Waco v. Diamond, Judge Critz, speaking for the court, said: "The trial court failed to give a direct specific charge, defining the burden of proof. He did, however, begin each question submitted with the words, 'Do you find from a preponderance of the evidence.' Then followed the question propounded. This is not only a proper way to indicate the burden of proof in special issue submissions, but it is the better way. Federal Surety Co. v. Smith (Tex. Com.App.) 41 S.W.(2d) 210."

As already shown, the trial judge submitted to the jury 65 special issues, which, we think, cover every pertinent and material fact issue called for by the pleadings and evidence, each and all of which were answered by the jury favorable to appellee and against appellants, except issue No. 57, as stated hereinbefore. Notwithstanding the submission of such 65 special issues, counsel for appellants requested the submission of 52 additional special issues, all of which were by the court refused. Appellants contend that the refusal to submit such requested issues, each and all, was error for which the judgment should be reversed, and the cause remanded.

Having reached the conclusion that the issues submitted covered every material and pertinent issue raised by the pleadings and evidence, we overrule the contention.

By the remaining propositions of appellants they insist that the evidence was insufficient to support the answers of the jury except the answer to special issue No. 57. We have hereinbefore stated that we thought there was sufficient evidence to support the findings of the jury, and we shall therefore overrule the contention here made without further discussion.

The majority of the court having reached the conclusions above expressed, it is ordered that the judgment of the court below be affirmed.

Affirmed.

PLEASANTS, Chief Justice (dissenting).

I cannot agree with my associates in the disposition made of this appeal, and in obedience to the statute present as briefly as I may this statement of the grounds of my dissent.

I think the twenty-third finding of the jury, set out in the opinion of the majority, "that Miss Burkhart did attempt to cross Walker Avenue by walking over a portion of the street not included within the lines of the sidewalk" defeats her right to recover in this suit. The evidence is amply sufficient to support this finding, and the undisputed evidence shows that in so attempting to cross the street she violated an ordinance of the city of Houston, and therefore was negligent as a matter of law. It cannot be held that the further finding of the jury that this act of the plaintiff "did not proximately cause or contribute to her injury" has any support in the evidence. It may be said that it is a physical impossibility for this negligent act of the plaintiff not to have contributed to her injury. If she had not been where she was when she was struck by the automobile, she would not have been struck. The authorities are numerous upon the proposition that when the evidence on a controlling issue in a case is such that reasonable minds cannot differ in the conclusion to be drawn therefrom, the court should instruct a verdict in accordance with the only reasonable conclusion that can be drawn from the evidence, and a finding of the jury against the conclusion so supported by the evidence should be disregarded by the court. This being the well-settled rule of law, it

follows that the trial court should have granted appellants' motion for an instructed verdict, and failing so to do, should have granted their motion to render judgment in their favor notwithstanding the verdict of the jury.

If the appellee had been caused to violate this ordinance of the city in an effort to protect herself from danger of injury suddenly thrust upon her by the negligence of the driver of the automobile, or if the driver of the automobile, after discovering her peril, failed to use proper care to prevent her injury, the liability of the driver for the damages caused her by his negligence would not be questioned, as her negligence would in such circumstances not be a proximate cause of her injury. But there is neither pleading nor evidence in this case of liability on either of these grounds. San Antonio & A. P. Ry. Co. v. Biggs (Tex.Civ.App.) 283 S.W. 627; Austin v. Neiman et al. (Tex.Com.App.) 14 S. W.(2d) 794; Sabine & E. T. Ry. Co. v. Dean, 76 Tex. 73, 13 S.W. 45; Blakesley v. Kircher (Tex.Com.App.) 41 S.W.(2d) 53; Koock v. Goodnight et ux. (Tex.Civ. App.) 71 S.W.(2d) 927.

I do not think any of the cases cited in the opinion of the majority on the general proposition that the negligence of a plaintiff in violating an ordinance or statute will not defeat his right to recover for injuries negligently caused him by the defendant, when the evidence shows that the negligence per se of the plaintiff did not contribute to his injury, are applicable to this case. The soundness of the proposition cannot be doubted, and is not questioned by appellants, their contention being that the physical facts shown by the undisputed evidence in this case were such that reasonable minds cannot differ in the conclusion that the negligence of plaintiff contributed to her injury. The evidence conclusively shows that the pedestrians who were standing on the corner waiting to cross within the lines prescribed by the ordinance did not enter the street until the defendants' automobile had passed them. If plaintiff had not violated the ordinance enacted for her protection, she certainly would not have been struck by defendants' automobile.

I also agree with appellants that there was no evidence to authorize the submission of appellee's claim for damages against Mr. and Mrs. Joe Seinsheimer. The trip from Galveston to Houston was

not made as a joint enterprize. Each of the occupants of the car desired to go to Houston for separate, individual purposes. J. F. Seinsheimer, Jr., wanted to attend an entertainment on the roof garden of the Rice Hotel and take his friend, young Flood, with him. His aunt, Miss Emma Seinsheimer, suggested to him to ask his grandmother if she would go and use her car. The grandmother, wanting to consult a physician in Houston, agreed that they would all go to Houston in her car. It seems that Miss Emma went for the purpose of doing some shopping. After the party reached Houston Miss Emma was left where she wanted to do her shopping, and Mrs. Seinsheimer was taken to the Esperson building in which the office of her physician was situated. When the important members of the party were so deposited, young Seinsheimer asked his grandmother if he could use her car to go for his friend Sam Miller, whom the family well knew, and drive around the city with him. Mrs. Seinsheimer consented to his so using her car, and it having been previously agreed that all of them would lunch on the Rice Roof, she told her grandson to bring Miller with him for lunch. The undisputed evidence shows that at the time of the injury to plaintiff young Seinsheimer, Flood and Miller were returning from their drive about the city and on their way to get Miss Emma and Mrs. Seinsheimer and take the party to the Rice Roof for lunch. I do not think that these facts show, or tend to show, that at the time of the accident in which appellee was injured, Mrs. Seinsheimer and her grandson and young Flood were engaged in a joint enterprise. Young Seinsheimer had possession of the car for his own use and pleasure, and the mere fact that at the time of the accident he was on his way to get his aunt and grandmother and go with them to lunch on the Rice Roof, to which he and his two friends, Miller and Flood, were invited, did not place him or Flood in the position of agent or servant of Mrs. Seinsheimer at the time the accident occurred, and by the same token they and Mrs. Seinsheimer were not at that time engaged in a joint enterprise which would make each responsible for the negligence of the other.

Neither do I think the evidence raises the issue of negligence on the part of Mrs. Seinsheimer in knowingly intrusting her car to an incompetent operator. There is not a word of testimony tending to show that the grandson, J. F. Seinsheimer, Jr.,

was negligent or incompetent as a driver of automobiles. The only evidence tending to show that Mrs. Seinsheimer knew that young Flood was an incompetent driver was that at some point on the way from Galveston Miss Seinsheimer became nervous at the way young Flood was driving and because of her nervousness Mrs. Seinsheimer asked her grandson to take the wheel. No statement is made of any act of negligence or incompetence by young Flood, and Miss Seinsheimer explained her nervousness by saying she was not accustomed to his driving. Before the party reached Houston, young Flood again took the wheel and drove through the streets of Houston until he delivered Miss Seinsheimer and Mrs. Seinsheimer at their respective destinations, without, so far as the evidence indicates, showing any incompetence or negligence in operation of the car. He was 16 years of age at the time of the accident, had experience in driving cars, and, as before stated, the only evidence tending to show that Mrs. Seinsheimer knew that he was not a competent driver was the incident of Miss Seinsheimer's nervousness at one time on the road from Galveston.

The fact that the jury found upon conflicting evidence that Flood, the driver of the car at the time of its collision with appellee and her consequent injury, was negligent in proceeding against the signal lights on Walker avenue and in going at a higher rate of speed than that permitted by the city ordinance, is not sufficient to raise an issue of negligence on the part of Mrs. Seinsheimer in turning the car over to her grandson without instructing him not to permit Flood to drive it. There being no evidence sufficient to raise the issue of knowledge on the part of Mrs. Seinsheimer of Flood's incompetence prior to the collision in which appellee was injured, she cannot be charged with such knowledge because he may have been shown incompetent or negligent at the time of the collision.

If I am right in my above conclusions as to the contributory negligence of the appellee, the judgment should be reversed and rendered for all of the appellants. If my other conclusions as to liability of Mr. and Mrs. Joe Seinsheimer for the negligence of Flood are sound, judgment should in any event be rendered in favor of Mr. and Mrs. Joe Seinsheimer.

If none of the above conclusions are sound, I think the judgment should be re-

versed, and the cause remanded, because of the failure of the trial court to grant a new trial, on the ground that the findings of the jury upon each of the controlling issues in the case above discussed are so against the great weight and preponderance of the evidence as to be clearly wrong, and indicate that the jury must have been improperly influenced in making the findings.