**TEXAS & P. RY. CO. v. GILLETTE et al.**

**No. 3450.**

Court of Civil Appeals of Texas. El Paso.
Dec. 10, 1936.

Rehearing Denied Dec. 30, 1936.

T. D. Gresham and R. S. Shapard, both of Dallas, Howard & Jackson, of El Paso, and Shropshire & Bankhead, of Weatherford, for appellant.

Charles Owen, Henry T. Moore, and R. L. Holliday, all of El Paso, for appellees.

PELPHREY, Chief Justice.

This cause was before us on a prior appeal and the judgment of the trial court affirmed. See 50 S.W.(2d) 901. The judgment was later reversed by Section A of the Commission of Appeals because of misconduct of the jury, see 125 Tex. 563, 83 S.W.(2d) 307. Reference is here made to both opinions for a statement of the nature of the suit.

The case was submitted to the jury on 101 special issues, 59 being given by the court at the request of appellant.

The jury's findings were:

1. That appellant, before attempting to proceed across Cotton avenue, failed to have a flagman with a lighted lantern go upon the crossing sufficiently in advance of its train to warn persons of the approach thereof; and that such failure was negligence and a proximate cause of the collision.

2. That it was negligence on the part of appellant to attempt to proceed across Cotton avenue without having a flagman on the front of the leading car, and that such negligence was a proximate cause of the collision.

3. That appellant failed to have a light on the front of the leading car, at the time and immediately before attempting to cross Cotton avenue, and that such failure was negligence and a proximate cause of the collision.

4. That appellant's employee discovered the automobile in which Gillette was riding approaching the crossing and realized that he was going upon the crossing and would be struck by the train, in time to have avoided the collision, and failed to use ordinary care in the use of the means at hand, to avoid the collision, and that such failure to use ordinary care was the proximate cause of the collision.

5. That the deceased was not driving his car at a rate of speed in excess of 20 miles per hour.

6. That deceased did not fail to look or listen for the approaching train before attempting to drive over the crossing.

7. That deceased was not negligent in approaching the crossing at the time and place of the accident, in the manner and way he did, and in the manner alleged by appellees in their petition.

8. That deceased did not fail to exercise ordinary care and prudence to ascertain whether or not a train was being moved upon and over the crossing at the time he approached the crossing and at the time of the collision.

9. That deceased did not know of the movement of the train and cars over the crossing in time to have stopped his automobile before it collided with the railroad car.

10. That deceased could not by the use of ordinary care, have known of the movement of the train over the crossing in time to have stopped his automobile before it collided with the railroad car.

11. That deceased, at or before the collision, did not fail to exercise that degree of care which an ordinarily prudent person would have exercised under the same or similar circumstances.

12. That deceased was not intoxicated nor in any degree under the influence of liquor at the time of the collision.

13. That deceased did not fail to keep a proper lookout for his own safety at the time he approached the crossing and at the time of the collision.

14. That deceased was not guilty of contributory negligence, as defined by the court, at the time of the accident, in approaching the railroad crossing and driving his automobile into the railroad car.

15. That deceased was not guilty of contributory negligence, as defined by the court, in failing to see the movement of the train over the crossing at the time and place of the accident.

16. That deceased was not guilty of negligence, as defined by the court, in failing to stop his automobile before it collided with the railroad car.

17. That deceased was not guilty of contributory negligence, as defined by the court, in failing to slacken the speed of his automobile and looking for moving trains and cars on the crossing as he approached it.

18. That at the time and place of the accident, the crossing was not sufficiently lighted with the usual street lights, the lights from the locomotive then standing just west of the crossing, the lights of appellant's train as it approached the crossing, the lights carried by appellant's employees attending the train, and the lights from the automobile of deceased, for him, by the use of ordinary care as he approached the crossing to have seen the moving train or car in time to have slowed down or stopped his automobile in time to have prevented the collision.

19. That appellant's train, as it approached the crossing, made the usual and customary noise, and that such noise could not have been heard by deceased had he used ordinary care in listening for the train, in time to have slowed down or stopped and prevented the collision.

20. That at the time of the collision deceased was not driving his automobile at a greater rate of speed than 20 miles per hour.

21. That at the time of the collision deceased was not driving his automobile at such a rate of speed as to endanger the life or limb of any person or the safety of any property.

22. That the approach of the train was not open, obvious, and visible to deceased.

23. That deceased did not fail to exercise ordinary care for his own safety in looking and listening for the train as he approached the crossing and before the collision.

24. That deceased, by the exercise of ordinary care for his own safety in looking for the train, could not have seen the train or car moving over the crossing in time to have stopped his automobile before it collided with the railroad car.

25. That deceased, in approaching the crossing, at the time and place of the accident, in the way and manner he did, did not fail to use the care that a man of ordinary prudence, under the same or similar circumstances, in the exercise of ordinary care for his own safety, would have used to ascertain whether or not a train was moving over the crossing before attempting to drive his automobile over it.

26. That deceased did not know and was not familiar with the crossing, and did not know that engines, trains, and cars were operated over it constantly, and could not have known of the approach of the train in time to have slowed down or stopped so as to have prevented the collision by exercising ordinary care for his own safety in stopping, looking, or listening for said approaching train at some time before the collision.

27. That the death of deceased was not the result of a mere accident.

28. That deceased did not fail to approach the crossing driving his automobile at such speed and under such control as made it possible for him to see the train, by the lights of his own automobile in time to stop his automobile before it collided with the moving railroad car.

29. That deceased's failure to stop his automobile before it collided with the moving railroad car was not negligence.

30. That deceased could not have seen the approaching train, by the lights of his own automobile, in time to have slowed down or stopped so as to have prevented the collision.

31. That deceased did not fail to drive his automobile at such rate of speed as would enable him to stop it within the distance he could see the train by the lights of his automobile.

32. That the failure of deceased to stop his automobile within the distance he could

see the train by the lights of his own automobile was not negligence.

33. That the train was not open, obvious, and visible to the deceased from the time it reached the east boundary line of Cotton avenue and thence moved to the place of collision.

34. That deceased, after discovering the train, or after, by the use of ordinary care, he could have discovered it, could not have driven his automobile around the west end of the train and thereby have prevented the collision.

35. That deceased did not approach the crossing without having his automobile under such control and while driving at a greater rate of speed than a person of ordinary prudence and care would have approached the crossing under the same or similar circumstances.

36. That deceased did not fail to keep such a lookout for his own safety as a person of ordinary care would have kept under the same or similar circumstances.

37. That the collision was not the result of an unavoidable accident.

38. That the appellees suffered pecuniary damage as a result of the death of deceased in the sum of $40,146.

In addition, the following two issues were answered in the negative by the jury:

"Special Issue No. 28, Requested by the Defendant.

"Do you believe from a preponderance of the evidence, at the time and place of the collision in question, defendant's train of thirty cars was being backed or pushed in a westerly direction over the tracks of the Southern Pacific Railway Company across Cotton Avenue at the speed of about three or four miles per hour, with the locomotive attached to the extreme east end of said train, the headlight thereof burning and the bell ringing; and that a switchman was riding in his proper place on top of the car next to said engine, and the foreman of the switching crew was at his proper place on top of the second car from the west end of the train, and both of said employees carrying and displaying lighted lanterns casting bright white lights; and the westerly end of the front or foremost car lighted with a fusee in the draw-bar thereof throwing a bright, red light in front of said front or foremost car as it approached and went on said crossing; and with one of defendant's employees preced-

ing said train about sixty feet and standing in the middle of the track on said crossing with a lighted lantern, continuously flagging said crossing with said lighted lantern to the time R. E. Gillette, deceased, collided with said car or train? Answer Yes or No."

"Special Issue No. 64, Requested by the Defendant.

"Do you find from a preponderance of the evidence the presence of said railroad crossing was well known to R. E. Gillette, deceased, and that the approach of the train was open, obvious and well known to him, and that with the knowledge of the presence of said railroad crossing and of said approaching train and car over said crossing he undertook to drive his automobile at such rate of speed as would enable him to beat the train over the track, but miscalculated his ability so to do and negligently drove his automobile into said railroad car? Answer Yes or No."

Upon these findings the trial court rendered judgment in favor of Eveline Gillette for $20,800; in favor of Ralph E. Gillette, Jr., $5,620; in favor of Kitty Virginia Gillette, $6,496; and to Thomas Bryan Gillette, $7,230. This division was according to the apportionment made by the jury. This appeal has been prosecuted from that judgment.

Opinion.

Appellant's brief contains 121 assignments of error and a like number of propositions. A separate discussion of these numerous propositions would be an undertaking which no court would or should even attempt.

After a careful checking of them we find that they may be divided into eight groups, viz.: (1) No. 1 attacking the court's refusal to instruct a verdict in appellant's favor; (2) those which complain of the court's refusal to submit requested issues and give requested charges; (3) No. 21, complaining of the definition of "Proper Lookout"; (4) those questioning the sufficiency of the evidence to support the different findings of the jury; (5) No. 116 complaining of the court's action in submitting any issues; (6) Nos. 117, 118, and 119 asserting that both the verdict and judgment are erroneous, contrary to law and unsupported by evidence; (7) No. 120 complaining of argument of counsel; and (8) No. 121 asserting the verdict to be inconsistent and contradictory.

■ On the former appeal, opinion reported in 125 Tex. 563, 83 S.W.(2d) 307, 308, it was said by the Commission of Appeals: "It is assigned that the request of plaintiff in error for a peremptory instruction in its favor should have been granted, because (a) there was no evidence of its negligence, and (b) the deceased was chargeable with contributory negligence as a matter of law. We do not deem it necessary to write at length upon this assignment. The opinion of the Court of Civil Appeals quotes extensively from the record and correctly concludes that an issue of fact was presented as to both the negligence of the railway company and the contributory negligence of the deceased."

There is nothing in the record now before us which will, in our opinion, justify a different holding, and, therefore, that decision disposes of appellant's propositions No. 1, and Nos. 65 to 119, inclusive.

Appellant requested the submission of a great number of special issues raising the question of the contributory negligence of the deceased and many of them were modified by the trial court. It would prolong this opinion to an unreasonable length to incorporate each of these requested charges and their modifications, and we shall merely refer to them by number.

Tendered charges 3, 4, 5, 13, 18, 19, 44, and 45, not only placed the burden upon appellees to show that deceased had not been guilty of contributory negligence, but assumed that he had driven his automobile into the railroad car.

Requested issues Nos. 10, 11, 59, 70, and 73, while they did not contain the assumption, placed the burden upon appellees, and Nos. 16, 20, 21, 46, and 53, contained the same assumption as those first mentioned.

The modification complained of had the effect of correcting the issues in one or both respects.

■ It goes without saying that the burden of establishing the contributory negligence of deceased was upon appellant, and that any issue placing it otherwise was properly refused.

■ It is also true that unless the fact that deceased drove his automobile into the railroad car is undisputed, issues which assume the existence of such fact are improper.

The witness Brown, who was in the automobile with deceased, testified that the railroad car which struck them was coming toward them from his right.

Appellant's Exhibit E shows that the front end of the tank car was the part that had been in contact with the automobile and that the angle cock which is in almost the center of the car had been broken off by the impact.

With these facts in mind it cannot be said that the undisputed evidence shows that the automobile ran into the car.

■ We find no error in the trial court's modification. Article 2188, R.S. provides for the modification of issues by the trial court and appellant's contention that its issues should have either been submitted as tendered or refused is without merit. The case cited was decided long before the statute was enacted and can have no application.

Appellant's requested issues Nos. 25, 26, and 35, are all general charges and were properly refused. Radford Grocery Co. v. Andrews (Tex.Com.App.) 15 S.W.(2d) 218.

Requested issue No. 75 was properly modified by striking from it the recital as to the distance traversed by the automobile from the time it reached the east line of Cotton avenue and the center of the street. The issue as submitted was a proper one.

The issue as to whether deceased could have driven his automobile around the west end of the railroad car and thereby avoided the collision was properly submitted as modified.

The requested issue assumed that deceased saw the car in time to have driven it around the west end of the car.

Appellant requested the submission of 86 issues relating to the contributory negligence and the record shows that 32 separate and distinct sets of fact upon which contributory negligence could have been based were submitted to the jury together with the appropriate conditional issues inquiring whether such facts constituted negligence and proximately contributed to cause the collision.

Appellant requested the following definition: "The term 'proper lookout', as used in this charge, means such a lookout as would be kept by a person of ordinary care and prudence in approaching a railroad track, under the same or similar circumstances, to discover the movement of trains

over the track, in time to avoid driving his automobile into and against a moving railroad car and injury thereby."

The court defined the term: "The term 'proper lookout', as that term is used in this charge, means such a lookout as would be kept by a person of ordinary care and prudence under the same or similar circumstances."

The requested definition also assumed that deceased drove his automobile into the railroad car and was to that extent improper.

■ The sufficiency of explanations and definitions as to form is largely in the discretion of the trial court, and the test is the reasonable clearness of the definitions to enable an understanding of the word by the jurors. Speers' Law of Special Issues, § 54, p. 64.

We think the definition as given met such test.

■ The cases cited by appellant holding that abstract principles of law should not be given in charge were both decided before our special issue statute was enacted. While it is true that the court, in Psimenos v. Huntley (Tex.Civ.App.) 47 S.W.(2d) 622, 624, used substantially the same language as appears in the requested definition, yet the court there was merely discussing the incorrectness of a definition which contained a provision that a pedestrian when he started to cross a street at or near an intersection should look both to the right and to the left to ascertain if there was a car approaching which might collide with him.

The court also used this language: "The law does not prescribe what particular acts on the part of a person attempting to cross a street at or near its intersection with another shall constitute a proper lookout. What shall constitute such lookout must be determined from all the facts and circumstances existing at the time of such attempted crossing."

In Northern Texas Traction Co. v. Jenkins (Tex.Civ.App.) 266 S.W. 175, 179, also quoted by appellant, is found this language: "The law imposes on the motorman of a street car the duty to keep such a lookout for persons who might be on or near the track on which he is operating the car as an ordinary person engaged in a like or similar capacity and under like or similar circumstances would keep."

In Lander v. Jordan (Tex.Civ.App.) 87 S.W.(2d) 1109, 1110, the court held that it was error not to define "proper lookout" upon request, but further held that if the issue of contributory negligence had been submitted in this manner, "Do you find from a preponderance of the evidence that the plaintiff, at the time of or just prior to the injury, failed to keep such a lookout for his own safety as a person of ordinary care would have kept under the same or similar circumstances?" no definition of "proper lookout" would have been necessary.

We find no reversible error in the action of the trial court in this matter and overrule appellant's assignment thereon.

Appellant's 121st proposition contends that there is a conflict between certain findings of the jury and for that reason the judgment should be reversed.

■ In questions of conflict all the issues must be construed together as a whole, and if, when construed as a whole, they admit of more than one reasonable construction, the trial court has power to apply that reasonable construction which it deems proper. First Nat. Bank v. Rush (Tex.Com.App.) 246 S.W. 349. And it is the court's duty to reconcile apparent conflicts in the answers on special issues if it can be reasonably done in the light of the pleadings and evidence. Texas Indemnity Co. v. Bridges (Tex.Civ.App.) 52 S.W.(2d) 1075, writ refused; Texas & P. R. Co. v. Foster (Tex.Civ.App.) 58 S.W.(2d) 557; 41 Tex.Jur. § 360.

With these principles in mind and without attempting to discuss them in detail in this opinion, which is already too long, we are of the opinion that the answers are reasonably subject to a construction which will obviate any conflict, and that the construction attempted to be placed upon them, by appellant, is not the correct one in view of the facts and circumstances of this case.

■ We also find that the court submitted issues as to discovered peril and that the jury answered them favorable to appellees. If such findings be supported by evidence, and we think they are, then we should not reverse the judgment because of conflicts in the findings on contributory negligence.

■ While Mr. Shropshire was making the opening argument to the jury for appellant, he said: "Then comes along

* * * and they would belittle our friend * * * where did he come from?"

Whereupon Mr. Jackson, attorney for appellant, replied: "Eagle Pass."

Then Mr. Shropshire proceeded: "What was his name?" and Mr. Jackson again replied: "Carl Mercer."

Then Mr. Shropshire said: "I don't know what they have got against Eagle Pass, I don't know that it is any discredit to a man to be from Eagle Pass, but they tried to call your attention to that to discredit about the only sober man that seemed to be in the circle out there that afternoon. * * * They didn't undertake to question the veracity of Carl Mercer, who used to live here, one of your own citizens. If he was unworthy of belief, they would have been in here impeaching him."

In his closing argument for appellees, Mr. Holliday said: "We will get back to the turkey directly. Why, even old Roy admitted that if the fellow had had a drink, in three hours he would be pretty sober. According to our testimony in this case, it had been five or six if he ever had a drink. If you eliminate the distinguished Sergeant, who, it was proven, told you a misstatement, and 'Shorty' Allen a misstatement, all you have left is old Mercer. Judge, out here we don't believe a man can be honest and have a heart like Mercer admits before this jury. What was his motive, wonder what his reason was, why the interest? Came here from Eagle Pass to further stab the wife of a friend. Boys, we don't grow them with hearts like that and believe they will tell the truth."

At this point Mr. Shropshire objected and Mr. Holliday replied: "He is your witness, you vouched for him."

Mr. Shropshire then asked that that remark be put in the bill and Mr. Holliday then said: "He stood up here before this jury telling you what a good, great soul this cold-blooded monster was."

When Mr. Shropshire asked that that remark be included in the bill Mr. Holliday further said: "If he can say he is a good Christian gentleman, then I can say he is a cold-blooded monster."

At the conclusion of the argument the court instructed the jury in writing as follows: "Mr. Holliday, in his argument made some statement to the effect that the witness Mercer came here from Eagle Pass to further stab the widow of a friend and subsequently referred to the witness as a monster. This argument was improper and good objection was made to the same. You will not consider this argument nor any reference therein for any purpose whatsoever and will not allow the same to influence you in any way."

This argument is complained of by appellant in its 120th proposition, and it also contends that the instruction above quoted failed to relieve it of its harmful effect and only served to accentuate its import.

Appellees, on the other hand, contend that the argument was justified by the facts in evidence and was a proper discussion of Mercer's credibility; that it was provoked by the argument of Mr. Shropshire; that it affirmatively appears that the argument did not affect the verdict; that any harmful effect was removed by the unusually forceful instruction given; and that the argument concerning the credibility of only one witness whose testimony was upon only the issue of the intoxication of the deceased, and appellees being entitled to judgment independently of the finding on that issue, it could not constitute reversible error.

It will be impossible to detail here the whole evidence that might be considered in passing upon the propriety of this argument.

Briefly, however, it appears that the witness Mercer claimed to be a friend of the deceased; that he refused to even discuss the case with appellees' counsel, but, on the other hand, talked to two attorneys and the claim agent of appellant several times; that he went to the scene where he claimed he encountered the deceased and took measurements and drew a map, all at the request of appellant's attorneys; that he went with the claim agent to talk with one of appellees' witnesses; that he came from Eagle Pass at appellant's expense to testify in this hearing of the cause; and that there were many sharp conflicts between his testimony not only as to the intoxication of the deceased but as to other details. With evidence of such an unusual interest on behalf of appellant in a case in which the widow and children of his friend were the plaintiffs, we cannot say that an attorney in discussing his attitude and credibility would be going far afield in saying that he had come to stab his friend's widow in the back or that he was a cold-blooded monster.

While attorneys should refrain from vituperative remarks, yet, when witnesses

put themselves in the position in which the witness Mercer placed himself in this case, it should be expected that opposing counsel may and will call that matter to the attention of the jury in arguing the case. If the statements made are fairly deducible from the facts and circumstances, certainly no reversal should be had even though the remarks should place the witness in an unfavorable light before the jury. Furthermore, we think the instruction given destroyed any harmful effect the argument might have otherwise had. This conclusion is borne out by the testimony of all of the six jurors who testified at the hearing on the motion for a new trial.

The testimony of these jurors also supports the contention that it affirmatively appears that the argument did not affect the jury.

We are further of the opinion that even if but for the remarks of Mr. Holliday the jury would have answered the issue of intoxication favorable to appellant, yet appellees were entitled to a judgment independent of this issue, and, therefore, the argument is harmless. McClure v. Fall (Tex.Com.App.) 67 S.W.(2d) 231.

We have studiously tried to give consideration to each of the multitude of propositions presented and have reached the conclusion that they are all without merit.

The judgment is affirmed.