## IMPERIAL UNDERWRITERS v. DILLARD.

### No. 8981.

Court of Civil Appeals of Texas. Austin.

Dec. 31, 1940.

Rehearing Denied Jan. 15, 1941.

Will R. Saunders, of Dallas, Simpson, Dorenfield & Fullingim, of Amarillo, and McCartney, McCartney & Johnson, of Brownwood (Claude Williams, of Dallas, of counsel), for plaintiff in error.

Gib Callaway, of Brownwood, and Grindstaff, Zellers & Hutcheson, of Weatherford, for defendant in error.

BLAIR, Justice.

This case arose under the Workmen's Compensation Laws, Vernon's Ann.Civ.St. art. 8306 et seq., John Dillard, called appellee herein, was the employee; Brown Brothers, a partnership engaged in operating trucks as a contract carrier, was the employer; and Imperial Underwriters, herein referred to as appellant, was the insurer. This suit was to cancel a compromise settlement of appellee's claim for $35, and to set aside the order of the Industrial Accident Board approving it. Appellee alleged that at the time he signed the settlement agreement he did not know what he was doing and was not mentally competent at the time to transact business. Upon the jury's answers to special issues, finding in substance that appellee did not know or understand that he was settling his claim for compensation, and that he was so mentally incapacitated that he did not know or understand the nature or effect of the release which he signed, judgment was rendered cancelling and setting aside the compromise settlement and the order of the Board approving it; hence this appeal.

Seventeen propositions are presented by appellant which assert that the trial court erred in the following matters:

1. In the manner of placing the burden of proof.

2. In permitting improper argument of counsel for appellee.

3. In so framing a special issue as to charge upon the weight of the evidence or to assume facts.

4. In failing to set aside the findings of the jury to several special issues because unsupported by or contrary to the great preponderance and overwhelming weight of the evidence.

The preliminary charge or instruction of the court reads as follows:

"This cause is submitted to you upon special issues, or questions, your answers to which will constitute your verdict herein. You will answer each and all issues submitted from the preponderance of the evidence admitted before you, and your foreman will sign each answer made. You will not discuss or consider any matter or fact not in evidence before you, nor will you discuss or consider the legal effect or result of any answer, but determine solely what you find and believe the facts to be from the preponderance of the evidence.

" 'Preponderance of the evidence' means the greater weight of credible evidence."

Each special issue was prefaced with the phrase, "do you find from the preponderance of the evidence," and the jury was instructed to answer each issue "Yes" or "No" as it might find from the evidence. Each issue was so framed as to place the burden of proof on appellee to show the affirmative where an affirmative answer was required to establish his allegation, and to show the negative where a negative answer was required to establish appellee's allegation or claim.

Appellant contends that this manner of placing the burden of proof was confusing, conflicting, misleading, and that the jury would unconsciously place the burden of proof upon it to establish the negative of the issues submitted; and the case of Gulf States Utilities Co. v. Moore, 129 Tex. 604, 106 S.W.2d 256, is cited as being "a typical white horse" case. We do not so regard it, because the special issues therein submitted were not prefaced with, "Do you find from the preponderance of the evidence," and the general charge instructed the jury to answer all special issues from a preponderance of the evidence, which was defined to mean "the greater weight of the credible testimony before you." The general charge in the instant case specifically instructed the jury to answer "each issue" from a preponderance of the evidence, defined preponderance, and then each issue was prefaced with the phrase, "do you find from the preponderance of the evidence," and each

issue was so framed as to place the burden of proof on appellee to show the affirmative of the issue where an affirmative answer was required to establish his allegation, and to show the negative of the issue where a negative answer was called for to establish appellee's allegation or claim. An entirely similar case is that of Seinsheimer v. Burkhart, Tex.Civ.App., 93 S. W.2d 1231, wherein the Court of Civil Appeals overruled similar contentions to those made by appellee here; and in reviewing the case (132 Tex. 336, 122 S.W.2d 1063, 1065) the Supreme Court, speaking through its Commission, stated that, "We * * * approve the holding of the Court of Civil Appeals on the question of burden of proof."

One of appellee's attorneys made the following statements to the jury:

"I want to discuss with you a few minutes the issues submitted to you ·by ·the court. It will be my purpose and object to undertake to assist you in understanding what the issues are as submitted to you, and so far as I may be able to do so some of the evidence· bearing upon these issues, and I will undertake to discuss with you and explain to you the theory of the plaintiff in this case, and the reason why we feel that you should answer these questions or issues submitted to you by the court in a certain way."

"It is the theory of the plaintiff in this case that these issues should be answered, all of them yes except the last two, and that those two should be answered no."

■ These statements were objected to as being tantamount to telling the jury the effect that their answers would have upon the judgment to be rendered. We do not sustain this contention.

■ The effect of the argument was that from the evidence it was the theory of appellee (plaintiff) that certain issues should be answered "Yes" and others "No." No reference was made as to what judgment should or would be rendered on the jury's answers. Argument of counsel would be worthless unless he could discuss the evidence from his client's viewpoint, and the rule is settled that "for counsel to request the jury to answer certain issues 'Yes' and other issues 'No' is not objectionable." 41 Tex.Jur. 1203, § 341, and cases there cited.

■ Counsel for appellee made the following statements to the jury:

"I believe I know enough about human nature, and I believe you do too, to know that those boys would not have walked out and called the nurses if that boy was not having a fit. That would have been ridiculous, but possibly the nurses were busy, or for some other reason—or maybe the insurance man had been around there or given them chewing gum or for some other good reason, they did not go immediately, and he was over the fit when they got there." .

"The nurses say we were down on the second floor and we heard a noise or disturbance on the third floor, and the first young lady says, when I heard that noise I went up and looked around in all of the rooms and finally I went · into Dillard's room and found him laying on the floor in his night gown, and I spoke to him, and did you notice that it took me an hour to get her to admit it. That was the best coached witness, and the most anxious to serve the side she was sticking up for that I ever saw on the witness stand—."

Appellant objected upon the grounds that there was. no evidence on which the statements could be based and that same were improper and prejudicial. As to the first statement, counsel, upon the objection being made, stated, "I did not say that they did," and to the second objection counsel· went over several questions he had asked several of the nurses, and their reluctance to answer them. The court made no ruling on these objections and no motion was made to instruct the jury to disregard them.

We do not regard the argument as of such inflammatory nature that an instruction to the jury would not have prevented any injury, if such argument was improper. St. Louis, S. F. & T. R. Co. v. Green, Tex.Com.App., 37 S.W.2d 123.

■ Counsel for appellee made the following statement to the jury:

"Major talked about his sympathy, and gave us all these eulogies to mothers and to doctors. That is fine. But if he wants to put a little of it in practice let him practice it in this case. Why don't he pay something· here to this unfortunate boy that he admits· is probably totally and permanently disabled and with three lawyers here to protect his company, trying to hide behind a smoke screen of three lawyers—

"Mr. Simpson: We object and except to that argument just made.

"Mr. Zellers: I am just replying to him.

"Mr. Simpson: Trying to hide behind a smoke screen with three lawyers—

"Mr. Zellers: If that smoke screen is prejudicial take it out.

"The Court: Gentlemen of the jury, you will not consider that argument."

We regard the court's instruction to the jury to disregard the argument as effective, and overrule the contention of appellant that it was of such harmful nature that it could not be cured by the instruction. Texas & P. R. Co. v. Gillette, Tex.Civ. App., 100 S.W.2d 170; Collin County Motor Co. v. Howard, Tex.Civ.App., 121 S. W.2d 460.

■ The court submitted to the jury an issue to determine whether at the time appellee signed the release of his claim he "was so mentally incapacitated that he did not know and understand the nature and effect of the instrument he was signing." Appellant objected to the issue as being upon the weight of the evidence and as assuming the existence of mental incapacity. We do not so regard the issue. Appellee alleged that he was so mentally incapacitated at the time he executed the release that he did not know or understand the nature of the instrument. It seems to be appellant's contention that two issues should have been submitted, first, whether appellee was suffering any mental incapacity; and, second, whether such mental incapacity was of such degree as to render him unable to know or understand the nature of the instrument he was executing. The issue submitted simply required the jury to determine mental incapacity in relation to the act of executing the release, which was the ultimate issue involved under the pleadings and evidence.

■ The remaining questions relate to the contentions of appellant that the jury's answers to the various special issues and the judgment based thereon are not supported by or are contrary to the great weight and preponderance of the evidence. The evidence relating to the issues involved was conflicting and the jury's findings were supported by sufficient evidence.

Briefly, it was the case of appellee that the compromise agreement and the release of appellee's claim were made and executed at a time when he was suffering from injuries which rendered him so mentally incapacitated that he did not know or understand what he was doing. The evidence showed that he was thrown from a truck which overturned on the highway, falling on his head and causing injuries to the 4th cervical vertebra and to the left traverse process of the 7th vertebra. A few hours after the accident he was seized with a convulsion or fit; that the following day and night he had numerous fits, and while in a hospital at Rising Star he had eighteen fits one night. He stayed in that hospital about a week and sedatives were given him which helped his condition. The day following his return home, he was sent to the hospital at Brownwood, where he stayed another week; and his brother testified that he had fits while there, and he was given sedatives the day before he made the compromise agreement, and he left the hospital the day he made the agreement and was paid the $35. At home that night he was seized again with fits, and while there an agent of appellant secured his signature to the release, which was five days after the compromise agreement and after he had been paid the $35. He was then sent back to the hospital for a week, and on two occasions was heard to fall out of bed, and was found lying on the floor by the nurses. He testified that he had some recollection of signing some sort of paper, but did not know what it was; that he had no recollection of many things that transpired during the 22 days after his injury. Afterwards, he was examined by a physician whom his brothers selected, who took a history of the case and a written laboratory report and X-ray pictures, and made a thorough physical examination of appellee, and from which he was of the opinion that the fits or convulsions, which continued to the date of the trial although they were less frequent because of medicines and diet given, were the result of the injuries to his vertebra. He further testified that one so suffering might sign the papers and have no recollection of doing so; and that from the history of appellee, his X-ray pictures, the laboratory report, and his examination of appellee, he was of the opinion that he was mentally unsound, and that it was entirely possible for him to have executed the instrument without knowing what he was doing, and without any recollection of having done so. He further testified that appellee was suffering of petit mal or grand mal, which meant epilepsy, which in his opinion was caused by the injuries to his vertebra.

We find no error requiring a reversal of this case, and the judgment of the trial court is affirmed.