## WEST TEXAS TRANSP. CO. v. HASH et ux.
### No. 879.

Court of Civil Appeals of Texas. Eastland.

July 3, 1931.

Rehearing Denied Nov. 6, 1931.

Second Motion for Rehearing Denied Nov. 20, 1931.

Cox & Hayden, of Abilene, and Leachman, Gardere & Bailey, of Dallas, for appellant.

Scarborough, Ely & King, of Abilene, for appellees.

LESLIE, J.

This is an action by F. E. Hash and wife against the West Texas Transportation Company to recover damages alleged to have been sustained by them by reason of the death of their daughter, Thelma Hash. The deceased and four other parties, including her sister and brother, all adults, were driving in a Chevrolet coupé. The car was being driven

by one Robert Baker. About midnight on April 8, 1930, as the parties proceeded in an easterly direction along the Bankhead highway just west of the town of Roscoe, Nolan county, Tex., they ran into the rear end of a truck belonging to the appellant, and which had stopped so as to project considerably onto the paved portion of the highway. As a result of the collision, Thelma Hash and another of the party were instantly killed.

At the time of her death Thelma Hash was twenty-one years and thirteen days of age. She had theretofore been married, and about a year after such marriage separated from her husband and obtained a divorce, returning to live with her parents, plaintiffs herein. As such member of the household, the allegations and testimony are to the effect that she was industrious, dutiful, and contributed to the financial support and welfare of the plaintiffs.

The negligence charged to the defendant consisted in parking the car upon the paved portion of the highway when there was sufficient room for the same to have been taken off the highway, and in failing to have a taillight on the truck as a warning to those who approached. The defendant answered by exceptions, general denial, and specially answered that the death of the deceased was the result of an unavoidable accident, and that the deceased was guilty of negligence in various respects causing the collision and the resulting injuries. The driver, Robert Baker, was charged with operating the car at a rate of speed in excess of forty-five miles an hour, with being drunk, failing to keep a proper lookout, etc., and the deceased, Thelma Hash, was charged with acquiescing in and adopting such conduct, thereby rendering her guilty of negligence in not objecting to the manner and method in which the automobile was being operated at the time of the injuries.

The case was tried before a jury and submitted on numerous special issues, and all except one, the twenty-ninth, were answered in favor of the plaintiffs, for whom judgment was rendered. The transportation company appeals. Further statement of the testimony will be made when necessary to reflect the rulings of this court.

In the outset, the appellees object to this court's consideration of the appellant's propositions chiefly because they are inaccurately numbered. For instance, the "Statement, Authorities and Argument under Proposition No. 1" in fact pertain to proposition No. 2, and were evidently so intended. More than one error of this kind is found in the brief, and necessarily the purported correlated statement under a certain proposition appears to be given under a proposition to which it does not relate. This, with kindred irregularities not objected to, is confusing, but we have

concluded that they are not of such serious nature as to authorize a rejection of the propositions, and they will be considered in the order in which they appear, as evidenced by the statement, authorities, etc.

The first proposition complains that the court, over the objections of the appellant, failed to properly place on plaintiff the burden of proof on the issue of unavoidable accident. That issue, No. 7, is: "Do you find from a preponderance of the evidence that the accident in question was the result of an unavoidable accident? Answer 'Yes' or 'No.'"

The evidence raised this issue, and it was submitted without any objections upon the part of the plaintiffs or the defendant. It is the contention of the appellees that the defendant never objected to the charge on the ground of misplaced burden of proof. If any objection was made, it is to be found in objection No. 7-a, among the defendant's general objections to the court's charge. If objection 7-a was seasonably made and overruled, the judgment must be reversed upon the following authorities, holding that, on an issue of unavoidable accident in a negligence case, the burden is upon the plaintiff to establish the negative thereof: Rosenthal Dry Goods Co. v. Hillebrandt (Tex. Com. App.) 7 S.W.(2d) 521; Texas Elec. Ry. Co. v. Scott (Tex. Civ. App.) 21 S.W.(2d) 24; Ry. Co. v. Washington, 94 Tex. 510, 63 S. W. 534; Dallas Ry., etc., Co. v. Darden (Tex. Com. App.) 38 S.W.(2d) 777.

The order of the court disposing of appellant's objection to the main charge is as follows:

"The foregoing exceptions to the court's charge as prepared and filed by the defendant, West Texas Transportation Company, having been duly and seasonably presented to me, the undersigned, before the charge was read to the jury, and having been by me refused, to which action the defendant excepted, those foregoing exceptions on request of the defendant are herewith ordered filed as a part of the record in this case to constitute the defendant, West Texas Transportation Company's Bill of Exception Number One.

"The court gave the defendant the first draft of his charge about four o'clock P. M. October the 10th, 1930, and all of the special issues, except the first six and the issue on the measure of damages were dictated by defendant's counsel. Some small changes were made in the charge that night, and about nine o'clock that night the court received a copy of the exceptions of the defendant, at which time exception 7-a was not written on the margin of the exceptions.

"The next morning about nine o'clock the court gave the defendant a draft of his final charge. The defendant thereafter dictated to the court reporter certain exceptions to

the amended portion of the charge, but the exception set out on the margin of the exceptions as 7-a, and written out in pen, was not mentioned in the exceptions dictated to the reporter. I am unable to certify as to when 7-a was written on the margin of said exceptions, and I cannot certify that it was ever called to my attention. The other exceptions were called to my attention before the court's charge was given, to which qualification the defendant in open court duly excepted."

It will be observed that the first paragraph of the court's authentication of these objections is to the effect that all of them, including 7-a, were seasonably presented to the court, and by him overruled before the charge was read. Then certain facts pertaining to objection 7-a are stated by the court. But this portion of the certificate of authentication is equivocal in its nature, and, while reciting circumstances surrounding the court's giving the general certificate of authentication to the objections, as found in the first paragraph of its above order, it does not have the effect of withdrawing 7-a from such general authentication.

This court is only interested in knowing whether objection 7-a was on the margin of the other objections and submitted to the court and overruled by it before the charge was read to the jury, or whether it was written there after such time. If 7-a was so presented along with other objections before the charge was read to the jury, no further act was necessary by way of calling it specially to the court's attention.

It is evident from the recitals in the certificate that the court did not intend to strike 7-a from the list of objections generally authenticated as presented in due time, for to have done so would have required but a simple statement to that effect, and, had the court considered objection 7-a as tainted with illegality and fraud, the same would undoubtedly have been stricken from the record. The situation presented an issue peculiarly and easily subject to investigation and determination in the trial court, which possessed ample means of ferreting out and ascertaining wrong and unethical practice in the matter, if any had been committed. Such is not the situation of this court.

The objections to the charge bore the names of at least two firms of reputable attorneys, officers of the court under the law. They stand before this court, as they did the trial court, vouching for the regularity of objection 7-a. There is no presumption that either of them forged the objection. It was written in longhand, and most likely by one of these attorneys, and the trial court would doubtless have investigated the authenticity of the objection had he been suspicious of its integrity. The objection being duly authenticated along with the others in the first paragraph of the certificate, and not unqualifiedly withdrawn by the circumstances recited in the latter portion of the certificate, the objection must be held to have been duly made.

If our views on this point be not correct, then we think the bill as tendered to the court would have to be considered without the qualifications attached thereto by the court. Looking by analogy at least to article 2237, R. S. 1925, prescribing the methods of preserving points, rulings, etc., by bills of exceptions, and providing for the rejection and qualification of the same by the court, as well as prescribing the duties of the court with reference to preparing bills of exceptions, when corrections suggested by the court are not agreed to by the parties tendering the bills, it appears that the court undertook to qualify the defendant's bill preserving the point here under consideration, and to do so in the face of the appellant's objections and exceptions thereto. In such case we think that the court should have returned the bill unqualified and proceeded to prepare, sign, and file with the clerk such bill of exceptions as would present the court's ruling on the objections found by him to have been in fact made and authenticated. In that event the court would have necessarily rejected or approved objection 7-a as' timely made, and thereby have left the appellant with his legal remedy under the statute to preserve and present the point in this court, if he could do so. No such bill having been prepared by the court, we must accept the bill tendered by the defendant. Such holding is required by the following authorities: Brunner Fire Co. v. Payne, 54 Tex. Civ. App. 501, 118 S. W. 602, 605; Jolley v. Brown (Tex. Civ. App.) 191 S. W. 177; Lanier v. Perryman, 59 Tex. 104; Stapleton v. State, 107 Tex. Cr. R. 596, 298 S. W. 578; McCarty v. State, 107 Tex. Cr. R. 589, 298 S. W. 575; Dailey v. State, 106 Tex. Cr. R. 99, 291 S. W. 242.

Having reached the conclusion that the court misplaced the burden of proof on the issue of unavoidable accident, and that the charge was seasonably objected to upon that ground, it follows that the court, in giving such charge over the objection, erred.

We next consider the proposition complaining that the court made certain fundamental changes in the charge, without submitting the same to the respective parties or their attorneys for inspection and objections. In the court's final draft of the charge as submitted for inspection, and as proposed to be read to the jury, question No. 29 was as follows:

"Would a person of ordinary prudence, riding in the automobile with Robert Baker, prior to its collision with defendant's truck, have failed to object to the manner and method in which the automobile was being operated by the said Robert Baker, at and immediately

prior to said collision and injuries? Answer 'Yes' or 'No.'

"If you have answered Question No. 29 'No', and only in that event, you will answer the following question:

"Question No. 30: Did such failure on the part of Thelma Hash cause or contribute to cause the accident and injuries complained of?"

Among other matters recited in the bill of exceptions relating to the alleged unauthorized change in the court's charge, it is stated:

"And be it further remembered that at some time after the court had declared that he would give the charge as written to the jury and would submit the issues as written to the jury, the exact time defendant's counsel is unable to say, owing to the fact that no knowledge was ever had thereof until after the jury returned its verdict in the case, the court, without advising defendant's counsel thereof, or in any manner calling their attention to it, changed the instructions immediately following Question No. 29 as above set out and made them read as follows, to-wit:

"If you have answered Question No. 29 'Yes' and only in that event, you will answer the following, question."

And the following question No. 30 was: "Did such failure on the part of Thelma Hash cause or contribute to cause the accident and injuries complained of? Answer 'Yes' or 'No.'

The bill of exceptions clearly certifies more than once that the change in the charge was made at a time unknown to defendant's counsel, and that they had no knowledge thereof until after the jury returned its verdict in the case. It is not claimed that the alteration was made in bad faith on the part of the court, and such, indeed, is not the case. The change was simply made in open court after the judge had commenced to read his charge, and was evidently considered to be the mere correction of an inadvertent error, clerical or otherwise, and to be a change without any fundamental or prejudicial effect toward either of the litigants.

Article 2185, R. S. 1925, prescribes the requisites of a charge, and sets forth the rules governing the giving of the same, and reads in part as follows: "It [the charge] shall be prepared after the evidence has been concluded and shall be submitted to the respective parties or their attorneys for inspection, and a reasonable time given them in which to examine and present objections thereto, which objections shall in every instance be presented to the court before the charge is read to the jury, and all objections not so made and presented shall be considered as waived. Failure of the court to give reasonable time to the parties or their attorneys for examination of the charge shall be reviewable upon appeal upon proper exception."

In view of this statute, we are of opinion that the change made in the court's charge, at the time and in the manner indicated, required that the charge be resubmitted to the respective attorneys for inspection and objections, if any they desired to make. Thompson v. Caldwell (Tex. Civ. App.) 22 S.W.(2d) 720.

Further, we think the change material and prejudicial to the appellant for the reasons following:

In paragraph 16 of the defendant's answer. among other things, it alleged that Thelma Hash, the deceased, just preceding the accident "* * * was engaged in talking. * * * That she had not known * * * the said Robert Baker, the driver * * * but that despite this fact she entrusted herself to the said Robert Baker upon the occasion in question and wholly failed to object to the manner and method in which he was operating said automobile at the time of said accident and injuries, and in this connection this defendant would show that the said Robert Baker had been operating said automobile prior to the time of said accident and injuries in a careless, reckless and negligent manner, and in the same manner as which it was being operated at the time of said accident and injuries to the said Thelma Hash. and that the said Thelma Hash did not object thereto, but by her silence and failure to object to the manner of such operation she acquiesced in the manner and method in which it was being operated, and she is therefore chargeable therewith."

Under these allegations and the testimony an issue of contributory negligence was presented, which the defendant had a right to have submitted to the jury. By the jury's answer to question No. 29 it found that a person of ordinary prudence, riding in the automobile with Robert Baker prior to the collision with the truck, would not have failed to object to the manner and method in which the machine was being operated by the said Baker at and prior to said collision. By answering issue 29 "No," the jury convicted the deceased of negligence, but, notwithstanding this finding, the jury was, by reason of the unauthorized change in the charge, instructed not to pass upon and determine whether such negligence caused, or contributed to cause, the injury complained of. In this appears the prejudicial nature of the change made in the charge, which in effect barred the appellant from the right of having the jury say whether or not such negligence on the part of Thelma Hash caused, or contributed to cause, the injuries complained of, and requires a reversal of the judgment.

 Appellees contend that the change in the charge made by the court was immaterial, harmless, and, in any event, waived by the appellant. The waiver is based upon the alleged duty of a party objecting to such change

to be present in the courtroom and make the same, or request additional time in which to make objections. We infer from the record, though it is somewhat meager in this respect, that, when the court began to read the charge, the defendant's attorneys were temporarily absent from the courtroom. However, on this point appellees' brief remarks, "There is no showing that both or either was absent when the court read his charge." In this situation the bill allowed by the court certifies that said counsel had no knowledge of the change made in the charge until the jury returned its verdict, and that the change was made without advising said counsel thereof. The certificate is entitled to controlling effect, and we do not think mere temporary absence from the courtroom when the court begins to read the final draft of his charge to the jury should be held to forfeit defendant's right to object to fundamental changes made in the charge under the circumstances set forth in the bill.

■ Further, we do not think issues 29 and 30 became immaterial because all the other issues were answered favorably to the plaintiffs. By way of illustration, it could not be argued that a finding of negligence upon the part of the defendant would dispense with the necessity of having the jury pass upon the issue of unavoidable accident properly raised in the same case. The court cannot be governed in its holdings by the jury's findings on other issues, but it is compelled to look to the testimony to ascertain whether or not an issue of fact was raised which it was necessary to pass for determination to the jury. Such an issue is found in question No. 30.

■ That a person riding in an automobile driven by another may be guilty of negligence proximately causing his injuries, thereby defeating recovery, has been held by our Supreme Court in the case of Texas Mexican Ry. Co. v. Hoy (Tex. Com. App.) 24 S.W.(2d) 18, 20, where it is said: "While a guest is not ordinarily required to exercise the same quantum of care and caution as the driver of an automobile, yet, if he sits by without warning or protest, and knowingly permits himself to be driven carelessly to his injury, he should be held guilty of contributory negligence. Parramore v. Ry. Co. (C. C. A.) 5 F. (2d) 912. The occupant of a vehicle should not be permitted to abandon the exercise of his own faculties and intrust his safety absolutely to the driver when he knows the vehicle in which he is riding is being driven in a careless and reckless manner into a known place of danger."

The judgment as it stands is not supported by the verdict. The jury's answer to issue 29 is out of harmony with the other findings, and is adverse to the plaintiffs.

A similar question is presented by the record, based upon an alleged change made by the court in his charge and involving issues 31, 34, and 35. We pretermit any discussion of this proposition. If our views on the immediately preceding proposition are correct, the judgment of the trial court must necessarily be reversed, and none of these matters will be injected into another trial. If our views on that proposition are erroneous, there would be no error presented by this proposition, and the same would be overruled. In either event, no useful purpose would be served by a discussion of this point, which is similar to that one just disposed of.

■ We are of opinion that the court did not err in permitting the parents to testify to their financial condition at the time of the death of the deceased daughter. As held in the following cases, it had a bearing on the pecuniary assistance which the parents had a reasonable expectation of receiving from their daughter's aid and support, if any: I. & G. N. Ry. Co. v. Kindred, 57 Tex. 491; A., T. & S. F. Ry. Co. v. Francis (Tex. Civ. App.) 227 S. W. 342; Id., 113 Tex. 202, 253 S. W. 819, 30 A. L. R. 114; Southwestern Portland Cement Co. v. Presbitero et ux. (Tex. Civ. App.) 190 S. W. 776; Schaff v. Shepherd (Tex. Civ. App.) 196 S. W. 232.

Numerous other questions are sought to be raised in the appellant's brief. It is claimed that the court erred in his definition of "proximate cause," "independent cause," "natural and continuous sequence," "independent force," "causal connection," "contributory negligence," "proper care," and "proper care and prudence." Such of these terms or phrases as are required to be defined have been accurately defined so many times, as may be seen from the cases reported, that it is unnecessary that anything be further written on such matters in this opinion. The court's duty with reference to those not necessary to be defined is equally clear and ascertainable. This court has not been inclined to extend the rule requiring almost every imaginable expression in a charge to be defined, and under the facts of this case no doubt approved charges may be found eliminating some of the troublesome phrases about which so much is said.

If, on another trial, contributory negligence must necessarily enter into the charge rather than the submission of an issue of negligence and proximate cause, it is doubtful in our minds that the court should say that contributory negligence in its legal signification is such an act or omission on the part of a person amounting to a want of ordinary and *proper care and prudence.* (Italics ours.) Extended objections and much of the briefing pertain to the italicized words. Possibly a jury would come to think that something of importance was being added to "ordinary care," which the court did not mean to do.

The definition that " 'natural and continuous sequence' means an act which ordinarily follows, the result of which may reasonably be anticipated from it," is subject to the objections that it falls short of being a definition of that term, and that it injects the idea of anticipation not necessarily a part of such definition. We are not called on to say that this term should be defined, but, if it must be, the definition ought to be prepared in the light of what is said on that subject in Ry. Co. v. Kellogg, 94 U. S. 470, 24 L. Ed. 256; Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Seale v. Ry. Co., 65 Tex. 274, 57 Am. Rep. 602; Washington v. Ry. Co., 90 Tex. 314, 38 S. W. 764.

Large portions of the briefs are devoted to the consideration of questions growing out of alleged improper and prejudicial arguments of counsel and the excessiveness of the verdict. These questions may not arise on the next trial. As to prejudicial argument, the decisions with reference thereto are so well understood by the profession, and especially the distinguished counsel representing both the appellant and the appellee, that no discussion of them is called for. Where the ends of justice are defeated by intemperate argument, it is just as positively the duty of an appellate court to reverse and remand for a new trial as where some other error of a supposed more fundamental nature has been committed.

For the reasons assigned, the judgment of the trial court is reversed, and the cause remanded.

### On Rehearing.

In response to the appellees' motion for rehearing, we modify our original opinion in the following respects: We overrule the appellant's assignment and proposition to the effect that the court improperly placed on the defendant the burden of proof on the issue of unavoidable accident. A re-examination of the record in the light of the motion for rehearing discloses that, although the burden was misplaced on the issue, the defendant was responsible therefor. The bill of exception approved by the court certifies that the defendant's attorneys dictated that portion of the charge. In this situation the error should be regarded as invited. Stark v. R. B. George Mach. Co. (Tex. Civ. App.) 41 S.W.(2d) 1023, 1028 (7); Texas Mexican Ry. Co. v. Canales (Tex. Civ. App.) 299 S. W. 668; T. & P. Ry. Co. v. Gibson (Tex. Com. App.) 288 S. W. 823; Tex. Jur. vol. 3, p. 1031, § 731.

Formerly we sustained the assignments and propositions complaining that the court erred in not submitting issue 30, the same being the issue of proximate cause, after the jury had answered question 29 to the effect that a person of ordinary prudence riding in the automobile with Robert Baker would not have failed to object to the manner and method in which the automobile was being operated. The contention is that questions 29 and 30 and their possible answers became immaterial, as the jury, in answer to numerous other issues, acquitted the driver, Baker, of negligence in every respect in so far as the manner and method of his driving the car was concerned. In other words, it is the contention of appellees that, because one group of questions and answers accounted for the injury on the theory of the defendant's negligence, and another group acquitted Baker, the driver, of any negligence based on "manner and method" of his driving, it became unnecessary and immaterial to have the jury pass upon the issue of proximate cause which logically followed the jury's answer to said issue No. 29. In a sense the contention seems plausible, but there are other convincing reasons, as explained in our original opinion, why this view cannot be adopted. In submitting a case on special issues, both parties are entitled to their theories of the case under the facts constituting the cause of action on one hand, and the matters of defense on the other, affirmatively submitted for determination to the jury. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517; Colorado & S. Ry. Co. v. Rowe (Tex. Com. App.) 238 S. W. 908; Oilbelt Motor Co. v. Hinton (Tex. Civ. App.) 11 S.W. (2d) 338.

The appellees' contention, it seems to us, would deny the defendant this right on the issue of proximate cause, at least.

We desire to restate our views on the appellant's contention that the court's definition of "natural and continuous sequence" was erroneous. As there said, we still think the definition that "natural and continuous sequence means an act which ordinarily follows, the result of which may be reasonably anticipated from it," fails of being a definition of that term. The words are of such usual and ordinary significance that the term as such is difficult to define. That is, its meaning is so evident that any attempt to render it clearer tends to darken the meaning rather than clarify the expression. It is like trying to define the term "definition."

The appellant in its brief complains of the insufficiency of the definition, and states, "Though there are numerous cases in this state that hold that a failure to define this phrase upon request presents reversible error, there are none, so far as we are able to find, that have ever given us a definition thereof." It is to be regretted that none of these cases so holding has been cited by the appellant. However, we find one bearing out the appellant's contention. It is Lone Star Gas Company v. Haire (Tex. Civ. App.) 41 S. W.(2d) 424, published since appellant's brief was prepared, and is an opinion by the Fort Worth court. It is there held that the phrase "natural, continuous and unbroken sequence"

is such "legal term" that a definition thereof should have been given by the court under the requirement of article 2189, R. S.

On the other hand, we find in the case of Rio Bravo Oil Company v. Matthews (Tex. Civ. App.) 20 S.W.(2d) 342, in an opinion by the Beaumont court, it was held that the trial court did not err in refusing to define the term "natural and continuous sequence." That court considered them to be ordinary words of simple meaning which it was unnecessary to define under said statute. We are not informed whether writ of error was applied for in either case. These are the only cases we have been able to find dealing directly with the point. In keeping with this court's views that the rule requiring definitions of legal terms should not be unnecessarily extended, we express a preference for the holding which declares it unnecessary for the court to define "natural and continuous sequence." The words have a plain and simple meaning.

Although it was unnecessary for the court to define said term, nevertheless we are of the opinion that the purported definition did not operate to the prejudice of the appellant on the grounds contended for by it. If the words submitted as a definition placed a burden on either party, it was upon the appellee rather than upon the appellant.

While the opinions in the Kellogg, Bigham & Seale Cases are very enlightening on the question of proximate cause, as well as other phases of negligence, those authorities are not cited as defining "natural and continuous sequence," and are referred to merely as throwing light in a collateral way upon the true meaning of the term in question.

In other respects, we think that the former opinion correctly disposes of the questions raised, and the motion for rehearing is overruled.

#### On Second Motion for Rehearing.

█ The appellees have been permitted to file a second motion for rehearing. By it they contend that, before error could be predicated on questions 29 and 30, and the jury's answers thereto, it was incumbent upon the appellant to secure a finding that Thelma Hash failed to object to the method and manner in which the driver, Barker, operated the car at the time and immediately prior to the collision. Stated differently, the contention is that, whatever finding the jury might have made in answer to question No. 30, the same would have been immaterial, and could not have affected the case.

It is said in this second motion for rehearing: "The finding that an ordinarily prudent person would have objected, etc., is not a finding that Thelma Hash did not object, etc., etc. The fact remains that this was a de-

fensive issue, and if not submitted to the jury it was waived and it was certainly incumbent upon the appellant to secure a finding from the jury that Thelma Hash failed to object, etc. It was not a question of whether a reasonably prudent person would have done it, but it was a question, did Thelma Hash fail to object," etc.?

We cannot agree to this contention. If any possible answer the jury might have returned to issue 30 would necessarily have been immaterial, the contention might be valid, but let us suppose issue No. 30 had been submitted to the jury in such a way as would have permitted or required them to answer the same and it had been answered in the affirmative. We would then have a finding by the jury in response to issues 29 and 30 that a person of ordinary prudence, riding in the car, would have objected to the manner and method in which Barker (the driver) was operating the same, and that such failure to object caused, or contributed to cause, the accident and injuries complained of.

With such findings taken in connection with the jury's answers to the other issues submitted, clearly no judgment could have been rendered thereon for the plaintiffs, and it is probable that such a verdict would have required a judgment for the defendant, a question we need not here discuss or decide. The very fact that the jury might have answered the question "yes" refutes the contention presented by the motion, and the same is overruled.