TUCKER et al. v. SLOVACEK.

No. 2886.

Court of Civil Appeals of Texas. Waco.
Sept. 21, 1950.

Rehearing Denied Oct. 26, 1950.

Second Motion for Rehearing Denied
Nov. 29, 1950.

Fitzpatrick & Dunnam, W. V. Dunnam, Jr., Waco, for appellant.

W. M. Harman, Smith & Segrest, Carl Mason, Waco, for appellee.

LESTER, Chief Justice.

Appellee filed suit against Mrs. Bertha Tucker and husband for partition of Lot C–2 in Block 13 of the Chamberlain Addition to the City of Waco as joint owner, and alleged that the property was not susceptible of division in kind and asked for the appointment of a receiver and prayed for an accounting of the rents collected by Mrs. Tucker. Geraldine D. Cunningham, joined by her husband, and Alois Slovacek, Jr., the two children of plaintiff and Mrs. Tucker, intervened in said cause, alleging that they were the joint owners of said property; that said property was bought for their use and benefit; that the cash consideration paid at the time the deed was executed was paid out of a trust fund belonging to them. Mrs. Tucker also made the same allegations. They pleaded an express, resulting and constructive trust, and also alleged improvements made in good faith.

The evidence shows that the appellee Alois Slovacek, Sr., and Mrs. Tucker were married in 1918 and were divorced in 1937. She married Tucker in 1945 and was divorced from him in 1948. She will be referred to as Mrs. Tucker and the children as intervenors.

The record does not disclose the exact date, but subsequent to the time the appellee and Mrs. Tucker were divorced he threatened to file suit against a man for alienation of his wife's affections, and the claim was settled for $5000. After this claim was settled he presented a claim for and on behalf of the two children, intervenors herein, each of whom was then over the age of nineteen years, and on application of the appellee their minority disabilities were removed on or about June 17, 1940. After said removal order was made, and on the same day, the claim was settled for $6000. The lawyer retained the sum of $2000 as his fee, and out of the $4000 remaining $1200 was paid to Alois Slovacek, Jr., and $1200 to Geraldine. The appellee received at least $1200, and he testified that Mrs. Tucker received the other $400, which she denied. The $1200 that Alois, Jr., received was deposited in the Mercantile National Bank of Dallas and joint control over the account was acquired by appellee, Mrs. Tucker and Alois, Jr. Geraldine's $1200 was also deposited at

the same time and in the same bank, with joint control to be exercised over said account by Mrs. Tucker, the appellee and Geraldine. Mrs. Tucker, on or about June 8, 1940, made application to the Home Owners Loan Corporation to purchase the property in question for a total consideration of $2750. Mrs. Tucker tendered a deposit of $50 of her individual funds with her application, an additional $637.50 was to be paid as a down cash payment and for the balance of $2062.50 she executed a note payable in monthly installments, running through a period of fifteen years. On June 25, 1940, Mrs. Tucker, by warranty deed, conveyed to appellee an undivided one-half interest in said property, with a recited consideration of $10 cash and other valuable consideration, and the assumption by the appellee of the note for $2062.50. Mrs. Tucker and the intervenors attack this deed, alleging that by reason of threats made by the appellee against Mrs. Tucker, she was deprived of the free exercise of her will through fear, and also pleaded that the consideration expressed in said deed was never paid.

Upon completion of the evidence, Mrs. Tucker and the intervenors filed a motion for an instructed verdict, which was overruled, and the court submitted the case upon special issues. The issues and answers returned by the jury are as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence, if any, that the deed from Home Owners Loan Corporation, dated June 17, 1940, in evidence before you, and the title thereby conveyed, was conveyed to and received by Mrs. Bertha Tucker (Slovacek) for the use and benefit of her children? Answer: 'Yes' or 'No'. Answer: No.

"Special Issue No. 2: Do you find from the preponderance of the evidence, if any, that the plaintiff, Alois Slovacek, prior to the execution and delivery to him of the deed dated June 25, 1940, knew that the property had been purchased by Mrs. Bertha Tucker Slovacek for the use and benefit of her children? Answer: 'Yes'. or 'No'. Answer: No.

"Special Issue No. 3: Do you find from a preponderance of the evidence, if any, that the $637.50 of the cash consideration recited in the deed of June 17, 1940, was paid out of funds belonging to the Slovacek children? Answer: 'Yes' or 'No'. Answer: No.

"Special Issue No. 4: Do you find from a preponderance of the evidence, if any, that the consideration recited in the deed from Mrs. Bertha Tucker (Slovacek) to Alois Slovacek was not paid? Answer: 'It was' or 'It was not.' Answer: It was.

"Special Issue No. 5: Do you find from a preponderance of the evidence, if any, that at the time of signing the deed dated June 25, 1940, the defendant, Mrs. Bertha Tucker (Slovacek) was in such fear of the plaintiff by reason of threats made by him that she was deprived of the free exercise of her will in relation thereto? Answer 'Yes' or 'No'. Answer: No.

"Special Issue No. 6: What amount of money, if any, do you find from the evidence, if any, that plaintiff, Alois Slovacek, Sr., received for the benefits of his children in the Collie settlement? Answer in dollars and cents, if any. Answer: $1200.00.

"Special Issue No. 7: What amount of the sum received for the benefit of the Slovacek children by the plaintiff, Alois Slovacek, Sr., has been paid and delivered to them by the said Alois Slovacek, Sr? Answer in dollars and cents, if any. Answer: $2400.00.

"Special Issue No. 8: Do you find from a preponderance of the evidence, if any, that plaintiff has received and converted to his own use any part of the funds received by him for the Slovacek children in the Collie settlement? Answer 'Yes' or 'No'. Answer: No.

"If you have answered the last preceding issue 'Yes' and in that event only, then you will answer the following issue:

"Special Issue No. 9: What amount of the funds received by the plaintiff for the use and benefits of the Slovacek children out of the Collie transaction has been converted by the plaintiff to his own use and benefit? Answer in dollars and cents, if any. Answer: None.

"If you have answered Special Issue 1, if you have found any amount, then you will answer the following issue:

"Special Issue No. 12: Do you find from a preponderance of the evidence, if any, that the Slovacek children, with their own funds, have made permanent and valuable improvements upon the property in question? Answer 'Yes' or 'No'. Answer: Yes.

"If you have answered Special Issue No. 12 'Yes' and in that event only, then you will answer the following issue:

"Special Issue No. 13: Were such improvements made by the Slovacek children made by them in good faith in reliance upon the statements to them by their mother that they were the owners of the property in question? Answer 'Yes' or 'No'. Answer: Yes.

"Special Issue No. 14: Do you find from a preponderance of the evidence, if any, that said improvements were made by the Slovacek children with the knowledge and consent on the part of the plaintiff, Alois Slovacek, Sr? Answer 'Yes' or 'No'. Answer: Yes.

"Special Issue No. 15: Do you find from a preponderance of the evidence, if any, that the intervenors, Alois Slovacek, Jr., and Geraldine Cunningham, have had and held peaceable, exclusive and adverse possession of the property involved in the suit, in person or through their mother, paying the taxes thereon before they became delinquent, for a period of five years next preceding the filing of this suit on January 3, 1947? Answer 'Yes' or 'No'. Answer: No."

No additional issues were requested by either Mrs. Tucker or the intervenors nor did either file any objections to the charge of the court. After the verdict was returned they filed their motion for judgment non obstante veredicto and their amended motion for new trial, each of which the court overruled, and Mrs. Tucker and the intervenors have appealed.

■ By several assignments of error they contend that the court erred in overruling their motion for an instructed verdict, rendering judgment against them and

overruling their motion for new trial, because the undisputed evidence, the greater weight and overwhelming evidence and the preponderance of the evidence shows that funds of the intervenors were invested in the property and the record title thereto taken in the name of Bertha Tucker to be held in trust for their use and benefit.

If there is sufficient evidence in the record to support the answers of the jury to the effect that the property was not purchased for the use and benefit of the intervenors and none of their funds were invested in the purchase price of the same, then they are not entitled to have said property impressed with a trust, either express, resulting or constructive, by reason of any of the above grounds. The appellee testified that he paid the $637.50 out of his individual funds and at the time he paid the money and at the time he received the deed to an undivided one-half interest therein he had no knowledge of any representation on the part of Mrs. Tucker to the intervenors that she was buying said property for their use and benefit; that he refused to pay the $637.50 until he had some evidence of his interest in the property; that his refusal took place in the presence of Mrs. Tucker, the real estate agent and the lawyer, and that he did not consent to pay out his money until the real estate agent suggested to Mrs. Tucker that she execute a deed conveying to him an undivided one-half interest, to which she agreed, and the lawyer told him that would protect his interests. The real estate agent testified that he was representing the Home Owners Loan Corporation at the time of the transaction and it was consummated in the attorney's office, and further testified:

"Q. State your name. A. Thomas E. Keahey.

"Q. What is your business? A. Real estate.

"Q. How long have you been in the real estate business? A. About thirty-five years.

"Q. During that time were you with the Home Owners Loan Corporation? A. Yes.

"Q. During that time did you become familiar with their methods of making loans? A. Yes, sir.

"Q. Mr. Keahey, do you remember a real estate transaction in which the Home Owners Loan Corporation sold, or agreed to sell, to Mrs. Bertha Slovacek, along sometime in June, 1940? A. Yes.

"Q. Did you handle that transaction for the Home Owners Loan Corporation? A. Yes.

"Q. Did you prepare the papers that went into the Dallas Office on that transaction? A. I prepared the sales application; of course, they prepared the deed and deed of trust and other papers in the Dallas office.

"Q. You prepared the application? A. Yes, sir.

"Q. Who did you negotiate that deal with? A. With Mrs. Slovacek.

"Q. Where was it finally consummated? A. In the lawyer's office up in the Medical Arts Building, I believe it was.

"Q. Who was present at the time? A. The lawyer, Mrs. Slovacek, Mr. Slovacek, and myself.

"Q. You four? A. Yes, sir.

"Q. Relate to the jury the circumstances in that office that morning when you four were present with reference to that transaction. A. When I went up there I brought the papers with me, I found Mr. Slovacek there, I didn't know why because he hadn't been mentioned in the deal up until that time, but he took them and began reading them all over, I supposed for the purpose of advising her about it, but when he got through he says 'I don't see my name in any place'. I thought, well, it wasn't supposed to be. He says, 'If I put my name in it I want a showing for it.' He says, 'These papers will have to be changed, can't you—speaking to the attorney—can't you add my name in here?' I says, 'No, that won't do because we are not allowed to change these papers in any way whatever if a change is made it will have to be sent back to the Dallas Office and that will change the whole complexion of the thing, we will have to make out a new application, a new sale, which they might refuse, they might not accept it, they had the option of doing either, and it would take a week or more to get it out; and I made a suggestion, if you all are agreeable, if we go ahead and close the sale as it is—speaking to Mrs. Slovacek—if you will make him a deed to an undivided half interest in the property that will take care of the situation and I can go ahead and finish it right away. I says, 'Will you do that?' She says, 'Yes, I will do that'. Mr. Slovacek talked to the attorney about it and the attorney says 'That will be all right'. I says, 'It's a much simpler way to do it, I know we can do it this way and we might possibly fall down doing it the other way.'

"Q. Did you prepare that deed for this one-half interest? A. Yes sir.

"Q. Did you do that at the request of Mr. Slovacek? A. It was at the mutual request of both of them. When I suggested we make a deed to an undivided half interest I turned to her—she was sitting on my right and Mr. Slovacek over here— and I turned to her and I said 'Is that agreeable with you' and she said 'Yes', and I asked him what about it, and before he answered he talked to the attorney about it and the attorney said 'I think that will be all right' and all agreed to go ahead and do that.

"Q. How much was paid that morning, if anything? A. He paid me the consideration, the balance of the consideration it called for, the sum of $675.00 or in the neighborhood of that.

"Q. Who paid you that money? A. Mr. Slovacek, in addition to the $50.00 that had been put up as a deposit.

"Q. Who put up the $50.00? A. Mrs. Slovacek.

"Q. And he paid you the balance that morning? A. Yes sir.

"Q. Did you get the deed signed by Mrs. Slovacek? A. Yes sir.

"Q. Is that the deed you have reference to? A. Yes sir.

"Q. You took the acknowledgment? A. Yes sir.

"Q. Where was this deed executed? A. Down at her house.

"Q. Did you take it down there for that purpose? A. Yes sir.

"Q. Was there any conversation between you and Mr. Slovacek at that time? A. Nothing except routine matters in any ordinary case like that.

"Q. Did she at any time while this transaction was being negotiated state that she was buying this property for the children? A. No.

"Q. Were either of the children's name ever mentioned in your presence? A. No.

"Q. Were any of the children present at any of the transactions? A. No.

"Q. What did Mr. Slovacek say when he found out his name wasn't in the deed, the original deed, prepared by the Home Owners Loan Corporation? A. He says, 'I don't see anything about my name in any of these papers' and he says, 'If I put my name in it I want a showing for it'. He says, 'Can't it be done?' I says, I told him 'No, we couldn't add to it at all', as I told you awhile ago."

Intervenor Alois Slovacek did not testify in person or by deposition as to an agreement to purchase the property for the use and benefit of the intervenors. Mrs. Tucker testified, in answer to questions propounded to her by her counsel, as follows:

"Q. Did you have an agreement with Mr. Slovacek that you all would buy this home for the children? A. I don't remember an agreement with him but I knew I was buying it for the children. I was buying it so they could save some money but I saved it for them.

"Q. Did you tell him along from time to time it wasn't his and that it belonged to the children? A. I told the children it was theirs all the time."

Intervenor Geraldine Cunningham testified that her mother told her from time to time that the property was purchased for the use and benefit of her and her brother; that she married on the day the property was purchased and after living in Wichita Falls for a short time she and her husband moved to Waco and lived in one of the apartments in the house approximately three years prior to the filing of this suit, during which time they paid rent. The appellee testified that it was the agreement between him and Mrs. Tucker when the property was purchased that it was to be paid for from the rents collected. Mrs. Tucker testified that she lived in the house and rented the apartments and collected the rent; that she collected from sixty to ninety dollars a month and paid the note of $2062.50 within about seven and a half years.

There are other facts and circumstances in the record which tend to support the answers of the jury, but in view of the foregoing facts, we are of the opinion that the answers of the jury are amply supported by the evidence, and that the trial court did not err in overruling either of said motions complained of.

Point 15 contends that the court erred in rendering judgment for the appellee for an undivided one-half and for Mrs. Tucker for an undivided one-half interest in the property and ordering sale and partition thereof between them, because it is shown by an overwhelming preponderance of the evidence and the findings of the jury that the intervenors made permanent and valuable improvements upon the property in good faith, relying upon the representations of their mother that they were the owners of said property, said improvements having been made with the knowledge and consent of the appellee, thereby creating a trust relationship and title by parole and creating an estoppel. The record clearly reveals that the real gist of this suit was a contest between the appellee on one hand and Mrs. Tucker and the intervenors on the other, and not one between Mrs. Tucker and the intervenors. The jury found that the property was not purchased for the use and benefit of the intervenors and that at the time the deed was executed conveying to appellee an undivided one-half interest therein he did not know that it was purchased for their use and benefit. There was no finding as to the amount or the value of said improvements. No issue on the question was sub-

mitted and none requested and no objection made in this respect. And the same circumstances exist as to estoppel against the appellee. The improvements were made subsequent to the purchase of said property. The fact that they were made with his knowledge and consent, standing alone, would not of itself create an estoppel as to him. This proposition is controlled by Rule 279, Texas Rules of Civil Procedure, and the many cases there cited. If the intervenors preferred to rely solely upon their allegations of ownership and waived their claim of improvements made in good faith, that was a privilege afforded them. We therefore overrule the foregoing proposition.

■ It is contended in points 16, 17 and 18 that there are irreconcilable conflicts in the various answers of the jury. There is no conflict in the answers wherein the jury found that the property was not purchased for the use and benefit of the intervenors and the appellee had no knowledge of such when the deed was executed conveying to him an undivided one-half interest therein; that the cash consideration paid at the time said property was purchased was not paid out of the funds of the intervenors and the consideration cited in the deed executed by Mrs. Tucker to appellee was paid, and that she was not in such fear of the appellee by reason of threats made by him that she was deprived of the free exercise of her will when she executed said deed. The rule is well settled in questions of conflict that answers to all the issues must be construed together as a whole, and that when so construed they admit of more than one reasonable construction, the trial court has the power to apply that reasonable construction which is deemed proper and it is the duty of the court to reconcile apparent conflicts in the answers to special issues if it can be reasonably done in the light of the pleadings and evidence. It is also the duty of the court in construing said verdict to disregard immaterial issues. Texas & P. Ry. Co. v. Gillette, Tex.Civ.App., 100 S.W.2d 170, 175; First National Bank v. Rush, Tex.Com.App., 246 S.W. 349; Yarbrough v. Dallas Railway & Terminal Co., 128 Tex. 445, 97 S.W.2d 169; Hartford Accident & Indemnity Co. v. Harris, Tex.Civ.App., 152 S.W.2d 857; and the many cases cited in the above authorities. It appears to us that the trial court followed the above rule in construing the findings of the jury and did not err in doing so.

■ Proposition No. 23 asserts error on the part of the trial court in not granting them a new trial on account of the argument of opposing counsel wherein he criticized Mrs. Tucker and the intervenors and their counsel because of their failure to produce a certain witness. The court qualified the bill of exceptions to the effect that no objection was made at the time said argument was made and he was therefore afforded no opportunity to instruct the jury not to consider the same. We are of the opinion that the argument was not so inflammatory that its prejudicial effect, if any, could not have been removed by proper instruction of the court, and in the absence of an objection until after the trial, said error was thereby waived. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054, 1056; Texas Indemnity Ins. Co. v. Bonner, Tex.Civ.App., 228 S.W.2d 348, 352; Baker Hotel of Dallas, Inc. v. Rogers, Tex.Civ. App., 157 S.W.2d 940, 944; First States Life Co. v. Mote, Tex.Civ.App., 110 S.W.2d 591, 592; MacFadden Publications v. Wilson, Tex.Civ.App., 121 S.W.2d 430; Classen v. Benfer, Tex.Civ.App., 144 S.W.2d 633.

We have considered all other errors assigned by the appellants and they are hereby overruled.

Finding no reversible error, the judgment of the trial court is affirmed.

### On Motion for Rehearing

Appellants have filed a lengthy motion for rehearing, in which they contend that this court committed numerous errors in its original opinion. Since we believe that a proper disposition was made of the case, we deem it necessary to discuss only the complaint raised by appellants of our holding in respect to the argument of opposing counsel, and in doing so we deem it advisable to set out more fully the facts as revealed by the record in reference thereto.

The following day after the return of the verdict of the jury appellants presented to the court their bill of exception, in which they set out "that the Honorable Claude Segrest, one of the attorneys for plaintiff, in his opening argument to the jury, criticized the defendant and intervenors and their attorneys because of their failure to produce as a witness the attorney who represented the parties in the settlement, and their failure to prove by him that the monies received in the settlement were not divided in four parcels among the parties at the time the settlement was effected, and for not proving by him that the defendant Bertha Tucker did not at said time receive $400.00 of the amount paid, it being shown by the record that said party was the attorney for the plaintiff in this cause in said transaction, and was employed by him and had been his attorney prior thereto in the presentation of a claim on behalf of the plaintiff against said party, it being further shown by the evidence that the settlement to which said argument related resulted from negotiations between the plaintiff and his attorney and the party who paid the money or his attorneys in a claim presented by the plaintiff against said party for the intervenors, they being minors at said time, and said negotiations leading up to said settlement having occurred prior to the time the intervenors' disabilities of minority were removed; to which action and conduct on the part of plaintiff's counsel in said argument the defendants and intervenors, in open court, excepted, and requested the court to instruct the jury not to consider the same, which exception and request were overruled by the court, to which action of the court the defendant and intervenors then and there in open court excepted; and the defendant and intervenors here and now prepare, file and submit to the court this their bill of exception No. 1 and request that the same be examined, approved and ordered filed by the court as a part of the record in this cause."

The bill of exception was not acted on until the court overruled appellants' amended motion for a new trial. Appellants, in said amended motion for new trial, assigned as error the argument of counsel and sought a new trial as the result thereof. The court heard evidence upon this particular assignment of error. One of appellants' counsel testified, and he had the opposing counsel whose argument is complained of sworn and placed upon the stand. There is a sharp conflict in their testimony as to whether or not any objection was made, and there is some discrepancy in their testimony as to just what was said by counsel in his argument. Appellants' counsel testified that he objected to the argument and the court overruled his objection, and that he requested the court to instruct the jury not to consider the same, which was by the court refused. Appellee's counsel testified that no objection was made to the argument complained of. At the conclusion of the testimony the court overruled the amended motion for new trial. The record reveals no findings of fact or conclusions of law nor any request therefor in respect to the hearing and overruling of said motion.

Under such state of facts, we must presume that the court impliedly found that no objection was made to the argument and no request was made that the jury be instructed not to consider the same. But the record clearly indicates that the court did find that no objection was made to the argument complained of and that no request was made of the court to instruct the jury not to consider it, by the following proceedings which took place in open court at the conclusion of the hearing upon said amended motion:

"The Court: I will overrule the motion.

"Mr. Dunnam: Note the exception.

"The Court: In connection with the testimony of Mr. Segrest and Mr. Dunnam, and in connection with the motion filed, I would like the record to show—

"Mr. Dunnam: I object to the court testifying. He has already overruled the motion and it's entirely out of order and premature at this time.

"The Court: I will qualify the bill of exception by stating in connection with the bill of exception, that I presided at the trial of the case and listened attentively to the argument of counsel, both for defendant and plaintiff, that there was but one

objection made by counsel for the defendant and intervenors and that was as to the reference made by Mr. Segrest to the effect that the intervenor Geraldine Cunningham was worldly wise, or words to that effect. I heard no objection made to that portion of the argument referred to in the motion for new trial, and made no ruling on it and no instruction was given to the jury.

"Mr. Dunnam: I move the court to exclude the ex parte statement of the court, made after the court had overruled the motion for new trial, and ask that our exception be noted and notice of appeal given.

"The Court: I am making my statement as a qualification to your bill of exception, and I am not making any statement except to qualify the bill of exception.

"Mr. Dunnam: Does the court overrule my motion?

"The Court: Yes, sir, and I have qualified the bill of exception."

At the same time or on the same date the court qualified the bill of exception as follows:

"The above bill of exception is qualified in the following manner: That at the time the argument complained of was made no objection was made to such argument, and the court, by failure of the attorney for the defendant and intervenors to so object, was not afforded the opportunity to instruct the jury in connection with such argument." (Signed by the Judge.)

"Defendant and intervenors except to the qualification on the bill." (Signed by the Judge.)

"As qualified, and subject to such qualification, the bill is approved." (Signed by the Judge.)

The record shows that said bill was filed with the clerk of the court on September 6, 1949.

The only assignment of error assigned to the argument in appellants' original brief is that "the trial court erred in refusing to set aside the verdict of the jury and grant a new trial on motion of appellants because of misconduct of appellee's counsel on the trial herein, that the Honorable Claude Segrest, who was plaintiffs' attorney, in his opening argument to the jury criticized appellants and their attorneys because of their failure to produce as a witness the attorney who represented the parties in the settlement agreement, and failure to prove by said witness that the monies received in the settlement by plaintiff for the benefit of intervenors was not divided into four parcels among the parties at the time the settlement was made, and in not proving by said witness that the appellant Bertha Tucker did not receive at the time $400.00 of the amount of the monies received in the settlement; it being shown by the record that said attorney was the attorney for appellee in his said transaction, and said conduct on the part of appellee's counsel being prejudicial and so harmful as that an instruction by the court could not have removed the damaging effect of said conduct on the part of appellee's counsel. (Thirty-six and Thirty-six A, original ground Motion for New Trial. Tr. pp. 48–49.)"

The only reference to their bill of exception in their original brief was in their argument, in which they said: "Appellants' bill of exceptions No. 1, Tr. pp. 53–54, qualified by the court on p. 55, and the testimony of Claude Segrest, appellee's attorney, from pp. 11–19, supplemental statement of facts, and the testimony of W. V. Dunnam, attorney for appellants, pp. 2–4, supplemental statement of facts, reveals misconduct on the part of appellee's counsel which was clearly prejudicial to the rights of appellants in the trial court."

Appellants now contend that since they excepted to the court's qualification and the court did not prepare and file a bill of his own, that the bill as originally presented by them must be taken as true as if no qualifications had been made by the court, and when so taken, it shows as a matter of law that the argument was made, that an exception thereto was taken which was overruled, that a request that the jury be instructed not to consider the same was made and refused, and that appellants were prejudiced thereby and therefore this court should reverse the judgment of the trial court and remand the cause, and in support of said contention submit the following authorities: West Texas Transportation Co. v. Hash, Tex.Civ.App., 43 S.W.2d 152, at page 155; Dailey v. State, 106 Tex.

Cr.R. 99, 291 S.W. 242; Rhoades v. El Paso & S. W. Ry. Co., Tex.Civ.App., 230 S.W. 481, 483; Palmer v. State, Tex.Civ. App., 226 S.W.2d 634; Robbins v. Wynne, Tex.Com.App., 44 S.W.2d 946; Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302; and Panhandle & Santa Fe Ry. Co. v. Ray, Tex.Civ.App., 221 S.W.2d 936.

Rule 372 T.R.C.P., pertaining to bills of exceptions, provides in part:

"(g) The judge shall submit such bill to the adverse party or his counsel, if in attendance on the court, and if found to be correct, the judge shall sign it without delay and file it with the clerk.

"(h) If the judge finds such bill incorrect, he shall suggest to the party or his counsel such corrections as he deems necessary therein, and if they are agreed to, he shall make such corrections, sign the bill and file it with the clerk.

"(i) Should the party not agree to such corrections, the judge shall return the bill to him with his refusal indorsed thereon, and shall prepare, sign and file with the clerk such bill of exception as will, in his opinion, present the ruling of the court as it actually occurred.

"(j) Should the party be dissatisfied with said bill filed by the judge, he may, upon procuring the signatures of three respectable bystanders, citizens of this State, attesting to the correctness of the bill as presented by him, have the same filed as part of the record of the cause; and the truth of the matter in reference thereto may be controverted and maintained by affidavits, not exceeding five in number on each side, to be filed with the papers of the cause, within ten days after the filing of said bill and to be considered as a part of the record relating thereto. The truth of such bill of exceptions shall be determined on appeal from such affidavits."

We are of the opinion that the court, after hearing evidence upon the question, found that no objection was made to this particular argument and that no request for an instruction to the jury not to consider it was made, such finding is binding upon this court, and the judgment of the court based upon conflicting testimony should not be set aside on the ground that the judge failed to prepare, sign and file a bill of exception after the appellants had excepted to his qualification to their bill as presented. The bill of exception as qualified was filed and appears in the record, and is the only one appearing therein. The record does not disclose any request of the appellants or anyone else for the judge to prepare, sign and file a bill of exception. The appellants refer to the bill in their brief as "our bill of exception", and under such circumstances the presumption is that appellants filed said bill and accepted it as qualified, as provided by T. J., Vol. 3A, sec. 547, p. 704: "A party who accepts and has filed a bill of exceptions which has been qualified or modified by the trial court is bound by the qualification, and when a bill which has been qualified by the court appears in the record, it will be presumed that the qualification was made with the consent of the appellant, in the absence of something in the way of a bill of exceptions signed by the judge or bystanders. Under such circumstances, the qualification becomes a part of the bill itself, and is controlling as to the facts therein stated; it must be accepted as true, and may not be contradicted nor the facts therein stated varied by an ex parte affidavit of counsel. There is nothing in the Rules of Civil Procedure that changes the law in this respect."

The motion for rehearing is overruled.